# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON CARRODINE, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>FLATIRON MEDIA, LLC<br><br>Defendant. | Case No.: 1:22-cv-09660<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

COMES NOW Plaintiff Jason Carrodine, individually, and on behalf of all others similarly situated, and for his Class Action Complaint against Defendant Flatiron Media, LLC, states:

## BACKGROUND, PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Jason Carrodine ("Plaintiff" or "Carrodine"), brings this case to protect the privacy rights of himself and a class of similarly situated people who were sent text messages on their phones by Defendant, Flatiron Media, LLC ("Defendant" or "Flatiron"). Flatiron sent Carrodine and the putative class members after they had registered their phone numbers on the National Do Not Call Registry.

2. In the early 1990s, Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers' privacy rights, namely, the right to

1

be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

3. The TCPA affords special protections for people who registered their phone numbers on the National Do Not Call Registry. Specifically, the TCPA provides that each person who receives more than one call on their phone after being registered on the National Do Not Call Registry is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

4. From January 2022 until October 2022, approximately 42.6 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited November 8, 2022). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

5. Carrodine is an individual who resides in and is a citizen of the State of Nevada.

6. Carrodine brings this action on behalf of himself and all others similarly situated.

7. Flatiron is a New York limited liability company with its headquarters in New York and, thus, a citizen of New York. Flatiron has been in good standing to transact business at all times relevant to this Complaint.

8. Flatiron transacts business in New York and throughout the United States.

9. Flatiron describes itself as a "full-service customer acquisition service provider." Flatiron states that it can assist in customer acquisition through using "lead generation" and "SMS communications."

10. Part of Flatiron's business is "lead generation" for its clients. Flatiron represents on its website that its "lead generation" services are "TCPA compliant."

11. Flatiron represents on its website that it generates more than "50 million client leads year after year" and that some of these leads are generates through "SMS [campaigns]."

12. "SMS" stands for "Short Message Service" and refers to standard text messages sent to cellular phones.

3

13. Flatiron aggressively markets for its clients, in part, by sending text messages to consumers' cell phones.

14. Carrodine is the owner of a cell phone. The phone number associated with his cell phone is 702-XXX-9862.

15. Carrodine's cell phone account/number is registered in his individual name and not in the name of a business.

16. Carrodine's number is a residential line.

17. Carrodine uses the cell phone/number primarily for personal purposes, namely, to communicate with friends and family members.

18. Carrodine did not provide his phone number to be called by Flatiron.

19. Carrodine has no prior business relationship with Flatiron.

20. Carrodine never inquired of Flatiron about any of its services before or at the time he received the text messages at issue.

21. Carrodine did not grant Flatiron consent to be called on his phone.

22. So as to be left alone from unwanted telemarketing, Carrodine registered his phone number on the National Do-Not-Call Registry on or about October 23, 2014.

23. Carrodine received at least two text messages on his phone from Flatiron or someone working on its behalf.

24. On or about May 9, 2022, Carrodine received a cryptic text message on

his cell phone from Flatiron. The phone number that appeared on Carrodine's phone was 1-360-643-5409. The text message stated: "Fuel c89NA.com/t6T5UTHQ."

25.     So as to determine who was sending him the text message, Carrodine clicked the link. Upon clicking the link, Carrodine was directed to a website that asked questions regarding gas prices, how often he filled up his gas tank and how many he miles he drives each week. The website had no indicia of who owned or operated the website.

26.     As the website with the questionnaire did not identify who was responsible for the marketing, Carrodine answered the three questions on the website to determine who was sending the text messages.

27.     Upon answering the three questions, a box popped up on the screen directing Carrodine to click a "claim" button to "proceed toward" a prize.

28.     Carrodine clicked the "claim" button so as to determine who sent him the unsolicited text message. Upon clicking the "claim" button, Carrodine was directed to a website with address "everydaywinner.com" which asked Carrodine to enter his email address for a chance to "win $500 toward fuel."

29.     Carrodine did not submit his phone number or submit any information that could reasonably be construed as consent to place telemarketing calls/texts while on the subject website.

30.     The website also included a box that could be check to purportedly

"double" Carrodine's chance of winning. By clicking the box, Carrodine would receive "offers from **our** marketing partners."

31. The bottom of the website finally identified Flatiron as the source of the text message. The website states, in part, "Welcome to Flatiron Media's suites of content and promotions websites."

32. The website further states that "Everyday Winner is a trademark of Flatiron Media, LLC."

33. The website also includes a privacy policy which is titled "Flatiron Privacy Policy."

34. The aforementioned transactions on May 9, 2022 shed light on a perplexing text message Mr. Carrodine had received only two days prior.

35. Specifically, two days before the May 9 text message, on May 7, 2022, Carrodine received a similar cryptic text message on his phone from Flatiron. The phone number that appeared on Carrodine's phone as associated with the text message was 1-818-619-6846. The text message stated: "Gasoline is mean 7Tx31.com/t6T5UTHQ"

36. Flatiron's conduct violated the privacy rights of Carrodine and the putative class members, as they were subjected to annoying and harassing text messages. Flatiron's text messages intruded upon the rights of Carrodine and the putative class members to be free from invasion of their interest in seclusion.

37. Flatiron's conduct caused Carrodine and the putative class members to waste time addressing and/or otherwise responding to the unwanted calls.

### Flatiron's Aggressive Telemarketing Tactics

38. Flatiron's unwanted and harassing telemarketing practices are not limited to Carrodine. The Better Business Bureau website for Flatiron includes complaints about Flatiron's marketing practices.

39. On August 3, 2022, a consumer made the following complaint to the BBB about Flatiron's telemarketing practices:

> "Flatiron Media or their marketing affiliate has sent multiple text messages to my number which is registered on the [Do-Not-Call list] in violation of the [TCPA]. Below is the link to the most recent spam text, advertising a gas card. I want to know where Flatiron Media got my information . . . ."

40. On July 30, 2020, a consumer made the following complaint to the BBB about Flatiron's telemarketing practices:

> "Whoever those people are need to stop because they text me several times a day offering gifts and money."

### Class Allegations

41. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Carrodine brings this lawsuit as a class action on behalf of himself and all others similarly situated.

42. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), Carrodine seeks to represent the following class:

> **Do-Not-Call Registry Class:** For the period from four years prior to the filing of this suit until the date a class is certified, all persons in the United States who: (1) received more than one telephone call from Flatiron (or someone acting on its behalf) advertising goods or services; (2) during a 12-month period; (3) to a residential telephone number; and, (4) to a phone number that was registered on the Do Not Call Registry for 31 or more days at the time the calls were placed.

43. Carrodine reserves the right to add administrative subclasses, or to amend the definition of the proposed class, as circumstances dictate.

44. The members of the proposed classes are so numerous that joinder of all members is impracticable. Carrodine reasonably believes that hundreds or thousands of people have been harmed by Flatiron's actions. The names and phone numbers of the members of the proposed class are readily identifiable through records available to Flatiron or those acting on its behalf.

45. Members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

46. On information and belief, Flatiron has sent text messages to and continues to text people who are registered on the National Do-Not-Call Registry. It is reasonable to expect that Flatiron will continue to make such calls absent this lawsuit.

47. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

    a. Whether Flatiron sent text messages to Carrodine and the putative class members after they were registered on the National Do Not Call Registry more than 31 days;

    b. Whether Flatiron's conduct violates 47 U.S.C. § 227(c);

    c. Whether Flatiron's conduct violates the rules and regulations implementing the TCPA; and,

    d. Whether Carrodine and the putative class members are entitled to increased damages for each violation based on the willfulness of Flatiron's conduct.

48. Carrodine's claims are typical of the claims of the proposed class members because his claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

49. Carrodine and his counsel will fairly and adequately protect the interests of the members of the proposed class. Carrodine's interests do not conflict with the interests of the proposed class he seeks to represent. Carrodine has retained lawyers who are competent and experienced in class action, TCPA litigation and consumer law.

50. Carrodine's counsel will vigorously litigate this case as a class action, and Carrodine and his counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

51. A class action is superior to all alternative methods of adjudicating this controversy, including through individual lawsuits. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

52. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

53. Questions of law and fact, particularly the propriety of calling phone numbers registered on the National Do-Not-Call Registry, predominate over questions affecting only individual members.

54. Flatiron has acted or refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

**Count I - Violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.***

55. Carrodine incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

56. The TCPA defines a "telephone solicitation" as a "call or message for the purpose of encouraging the purchase of goods, or services which is transmitted to any person." 47 U.S.C. § 227(a)(4).

57. The TCPA provides that is a violation of the law for a person whose phone number is registered on the National Do-Not-Call Registry to receive more than one call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

58. The penalty for each call placed in violation of the TCPA's restrictions on calling phone numbers registered on the National Do Not Call Registry is $500

per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

59. In addition, the TCPA allows the Court to enjoin Flatiron's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do-Not-Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

60. By making calls to the phones of Carrodine and the putative class members after their numbers were registered on the National Do-Not-Call Registry, Flatiron violated the TCPA, including, but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

61. Flatiron knew or should have known that Carrodine and the putative class members had their numbers registered on the National Do-Not-Call Registry.

62. Carrodine and the putative class members are entitled to damages of $500.00 per violation for each call made by Flatiron and up to $1,500.00 per violation if the Court finds that Flatiron willfully violated the TCPA.

## Demand for Judgment

WHEREFORE Plaintiff Jason Carrodine, individually, and on behalf of all others similarly situated, requests the Court grant the following relief:

a. Enter an order against Defendant Flatiron Media, LLC pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Carrodine as the class representative;

b. Enter an order appointing Kimmel & Silverman, P.C. and Butsch Roberts & Associates LLC as class counsel;

c. Enter judgment in favor of Carrodine and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of 47 U.S.C. § 227(b) and $500 per violation of 47 U.S.C. § 227(c), or up to $1,500 per violation of each subsection if Flatiron willfully violated the TCPA;

d. Enter a judgment in favor of Carrodine and the putative class that enjoins Flatiron from violating the TCPA's regulations prohibiting Flatiron from calling numbers registered on the National Do-Not-Call Registry;

e. Award Carrodine and the class all expenses of this action, and requiring Flatiron to pay the costs and expenses of class notice and administration; and,

f. Award Carrodine and the class such further and other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands a jury trial in this case.

Dated: November 11, 2022  Respectfully submitted,

           KIMMEL & SILVERMAN, P.C.

           By: */s/ Craig T. Kimmel*
           Craig T. Kimmel
           Jacob U. Ginsburg (*pro hac* forthcoming)
           30 East Butler Ave.
           Ambler, PA 19002

Phone: (215) 540-8888 ext. 148
Facsimile: (877) 788-2864
Email: kimmel@creditlaw.com
jginsburg@creditlaw.com
teamkimmel@creditlaw.com

BUTSCH ROBERTS & ASSOCIATES LLC

David T. Butsch (*pro hac* forthcoming)
Christopher E. Roberts (*pro hac* forthcoming)
231 S. Bemiston Avenue, Suite 260
Clayton, Missouri 63105
Telephone: (314) 863-5700
Facsimile: (314) 863-5711
Email: DButsch@butschroberts.com
CRoberts@butschroberts.com

*Attorneys for Plaintiff, Jason Carrodine*