UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON CARRODINE, ELI REISMAN, and KIMBERLY HUDSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FLATIRON MEDIA, LLC and HASE.COM LLC f/k/a UNLIMITED TRAFFIC LLC d/b/a "Has Traffic",<br><br>Defendants. | Case No. 1:22-cv-09660-JMF<br><br>**FLATIRON MEDIA, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

## TABLE OF CONTENTS

PAGE

I. INTRODUCTION ..................................................................................................................1

II. FACTUAL ALLEGATIONS ................................................................................................2

III. ARGUMENT ..........................................................................................................................4

    A. Legal Standard ..............................................................................................................4

    B. Courts Routinely Dismiss TCPA Claims Where Plaintiffs Fail to Assert More Than Conclusory Allegations ...............................................................................5

    C. The FAC Fails To Plausibly Allege That Flatiron Is Liable for Sending the Text Messages That Plaintiffs Allegedly Received from HasTraffic. .................8

        1. The FAC Concedes That Flatiron Is Not Directly Liable. .......................8

        2. The FAC Does Not Plausibly Allege That Flatiron Is Vicariously Liable for HasTraffic's Alleged Conduct. ...............................................9

            a. Plaintiffs Fail to Sufficiently Plead That Flatiron Provided HasTraffic "Actual Authority" to Transmit Unlawful Texts ...............................................................................................9

                i. The FAC Fails to Allege Control Sufficient to Establish a Principal-Agent Relationship......................................................10

                ii. The FAC Does Not Plausibly Allege That Flatiron Communicated to HasTraffic That It Should Send Plaintiffs Text Messages......................................................................11

                iii. The FAC Does Not Plausibly Allege That Flatiron Authorized HasTraffic to Knowingly Violate the TCPA. ........11

            b. Plaintiffs Fail in The FAC to Adequately Plead That They Relied on HasTraffic's "Apparent Authority" to Send Unlawful Text Messages on Behalf of Flatiron........................12

            c. Plaintiffs Fail to Sufficiently Plead in the FAC That Flatiron "Ratified" HasTraffic's Conduct.................................13

IV. CONCLUSION......................................................................................................................15

## TABLE OF AUTHORITIES

**P**AGE(S)

**C**ASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................................4

*Bank v. Vivint Solar Inc.*,
    No. 18-CV-2555, 2019 WL 1306064 (E.D.N.Y. March 22, 2019)................................. passim

*Banks v. Pro Custom Solar*,
    416 F. Supp. 3d 171 (E.D.N.Y. 2018) .......................................................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................................4

*Canary v. Youngevity Int'l, Inc.*,
    No. 18-CV-03261, 2019 WL 1275343 (N.D. Cal. Mar. 30, 2019).............................................9

*Cunningham v. Channer, LLC*,
    No. 17-CV-1305-FPG, 2018 WL 4620391 (W.D.N.Y. Sept. 26, 2018) ..................................11

*Dinaco, Inc. v. Time Warner, Inc.*,
    346 F.3d 64 (2d Cir. 2003).........................................................................................................9

*FAT Brands Inc. v. PPMT Cap. Advisors, Ltd.*,
    No. 19-CV-10497 (JMF), 2021 WL 37709 (S.D.N.Y. Jan. 5, 2021) ......................................12

*Gillam v. Reliance First Cap.*,
    LLC, No. 21-CV-4774, 2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023)................................8, 13

*Goodell v. BH Auto., LLC*,
    No. CV-20-01657-PHX-JJT, 2023 WL 2691452 (D. Ariz. Mar. 29, 2023)
    (applying *Jones*)......................................................................................................................11

*Hale v. Teledoc Health, Inc.*,
    No. 20-CV-5245 (VB), 2021 WL 1163925 (S.D.N.Y. Mar. 25, 2021)....................5, 10, 11, 14

*Hamm v. United States*,
    483 F.3d 135 (2d Cir. 2007).....................................................................................................13

*In re Shulman Transp. Enters., Inc.*,
    744 F.2d 293 (2d Cir. 1984).....................................................................................................10

# TABLE OF AUTHORITIES (continued)

**PAGE(S)**

*Jackson v. Caribbean Cruise Line, Inc.*,
88 F. Supp. 3d 129 (E.D.N.Y 2015) ...............................................................................7, 8, 9, 10

*Johnson v. Priceline.com, Inc.*,
711 F.3d 271 (2d Cir. 2013) ........................................................................................................10

*Jones v. Royal Admin. Servs., Inc.*,
887 F.3d 443 (9th Cir. 2018) .................................................................................................9, 11

*Kimberly Hudson v. Identity Intelligence Group, LLC*,
No. 22-CV-00884 (C.D. Cal. May 26, 2022) ............................................................................2

*Kristensen v. Credit Payment Servs. Inc.*,
879 F.3d 1010 (9th Cir. 2018) ....................................................................................................9

*Leone v. United States*,
910 F.2d 46 (2d Cir. 1990) ..........................................................................................................10

*Melito v. Am. Eagle Outfitters, Inc.*,
No. 14-CV-02440 (VEC), 2015 WL 7736547 (E.D.N.Y. Nov. 30, 2015) ................7, 8, 10, 11

*Phelan v. Local 305 of United Ass'n of Journeymen, & Apprentices of Plumbing*,
973 F.2d 1050 (2d Cir. 1992) ....................................................................................................14

*Rodonich v. House Wreckers Union Local 95*,
817 F.2d 967 (2d Cir. 1987) ......................................................................................................14

*Stark v. Stall*,
No. 19-CV-00366-AJB-AHG, 2021 WL 1978472 (S.D. Cal. May 18, 2021) ........................12

*Warciak v. Subway Rests., Inc.*,
949 F.3d 354 (7th Cir. 2020) ......................................................................................................9

**STATUTES**

Telephone Consumer Protection Act, 47 U.S.C. § 227 .......................................................... passim

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................1, 4

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Flatiron Media, LLC ("Flatiron") respectfully moves the Court to dismiss Plaintiffs Jason Carrodine, Eli Reisman, and Kimberly Hudson's (collectively, "Plaintiffs") First Amended Complaint ("FAC") (Dkt. No. 32).

## I.     INTRODUCTION

Plaintiffs bring a sole claim against HasE.com LLC f/k/a Unlimited Traffic LLC d/b/a HasTraffic ("HasTraffic") and Flatiron under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Flatiron is responsible for HasTraffic's alleged sending of unsolicited marketing text messages. Plaintiffs concede that Flatiron did not directly send them any text messages, which is the only way Plaintiffs could trigger direct liability against Flatiron under the TCPA. Instead, Plaintiffs speculate, in a shoot-first-ask-questions-later pleading, that Flatiron is vicariously liable for HasTraffic's sending of texts to Plaintiffs. In support of this claim, Plaintiffs rely solely on conclusory allegations, made on information and belief, that are legally insufficient as a matter of law. This Court's pleading standards do not allow Plaintiffs to simply make up alleged facts to suit their themes—they must bring forth specific factual allegations in their pleading that satisfy the pleading standards required for allegations of vicarious liability against Flatiron. Plaintiffs should not be allowed to force Flatiron to bear the burden and expense of defending their claims, when their conclusory claims do not meet this Court's pleading standards. Accordingly, Plaintiffs' claims against Flatiron fail as a matter of law, and their FAC should be dismissed.[1]

---

[1] Of course, if discovery against the actual sender of the alleged messages resulted in specific facts that would support a claim against Flatiron (it won't), Plaintiffs could seek to amend their complaint to add Flatiron at a time when the actual facts support their supposition.

## II.  FACTUAL ALLEGATIONS

The facts alleged in the FAC are taken as true for purposes of this motion to dismiss.[2]

Defendant HasTraffic is a digital and SMS text message marketing company that purports to generate leads and increase traffic to commercial webpages and online businesses. FAC at ¶ 20. HasTraffic sent telemarketing text messages to Plaintiffs Carrodine, Reisman, and Hudson.[3] *Id.* at ¶ 32 ("HasTraffic sent text messages to Plaintiffs . . ."), ¶ 33 ("HasTraffic sent Reisman messages. . . HasTraffic also sent text messages to Hudson . . ."), ¶ 53 ("Carrodine received at least two text messages on his phone from HasTraffic . . ."), ¶ 77 ("HasTraffic sent Reisman a text message . . ."), ¶ 83 ("Reisman received at least three additional text messages from HasTraffic . . ."), ¶ 95 ("HasTraffic sent Hudson a text message . . ."), ¶ 101 ("Hudson received at least two additional text messages from HasTraffic . . .").

Flatiron describes itself as a "full-service customer acquisition service provider" who operates websites offering consumer sweepstakes. *Id.* at ¶¶ 13-14. Flatiron represents on its website that its services are "TCPA compliant." *Id.* at ¶ 38.

---

[2] Flatiron does not admit to the truth of the allegations in the FAC, but instead expressly contests the allegations. The allegations are assumed to be true only for purposes of this motion.

[3] Plaintiffs are no strangers to TCPA litigation as they are each serial TCPA litigants. *Carrodine v. Pacific Green Energy, LLC*, No. 22-cv-00233 (E.D. Cal. Feb. 3, 2022); *Carrodine v. Heliosun, LLC*, 21-cv-01826 (D.Nev. Oct. 1, 2021); *Carrodine v. Assurance IQ, LLC*, No. 21-cv-01048 (D.Nev. June 3, 2021); *Carrodine v. Sunpath, Ltd.*, No. 20-cv-12306 (D.Mass. Dec. 31, 2020); *Reisman v. Northeastern Power and Gas LLC*, No. 23-cv-00620 (S.D.N.Y. Jan. 25, 2023); *Reisman v. Affordable Auto Protection, LLC*, No. 9:21-cv-80889 (S.D.Fla., May 17, 2023); *Reisman v. Homeassure, Inc. et al*, No. 21-cv-01787 (C.D.Cal. Oct. 28, 2021); *Reisman v. Independent Insurance Consultants Inc.*, No. 20-cv-16423 (D.N.J. Nov. 18, 2020); *Reisman v. Auto Care Warranty Solutions, LLC*, No. 20-cv-10449 (D.N.J. Aug. 13, 2020); *Kimberly Hudson v. Identity Intelligence Group, LLC*, No. 22-cv-00884 (C.D. Cal. May 26, 2022); *Hudson v. SNVA, LLC*, No. 21-cv-02617 (D. Md. Oct 12, 2021); *Pepper et al v. Fluent, Inc. et al*, No. 21-cv-06581 (S.D.N.Y. Aug 04, 2021); *Hudson v. Wesson for Supervisor 2020*, No. 4:20-cv-01039 (N.D. Tex. Sep 18, 2020).

The texts HasTraffic sent to Plaintiffs did not identify Flatiron as the sender. *Id.* at ¶¶ 66, 84, 103. Plaintiffs alleged that they clicked on the links that they were sent in these texts, which directed them to a website. *Id.* at ¶¶ 55, 79, 97. The websites Plaintiffs were taken to after clicking the links also did not mention Flatiron, but instead presented Plaintiffs with a series of questions about gas prices and their driving habits. *Id.* at ¶¶ 55-57, 80-81, 98-99. There is no allegation these websites are owned or controlled by Flatiron. Once Plaintiffs responded to the questions, they were allegedly directed to another website that stated, in part, "Welcome to one of Flatiron Media's suites of content and promotions websites." *Id.* at ¶¶ 61, 82, 100. And that website includes Flatiron's terms, official rules, physical address, and privacy policy. *See, e.g.*, *id.* at ¶ 100.

On *information and belief*, Plaintiff alleges that Flatiron and HasTraffic entered into a contract for services. *Id.* at ¶ 108 (emphasis added). On *information and belief*, Plaintiffs also allege that Flatiron hired, encouraged, permitted, and enjoyed the benefits of mass spam-marketing by HasTraffic. *Id.* at ¶ 118 (emphasis added). From these speculative foundational allegations, Plaintiffs further speculate that "[i]n that contract, Flatiron retained the ability to substantially control the marketing activities of HasTraffic" (*Id.* at ¶ 109) and "HasTraffic sent SMS messages on Flatiron's behalf while acting at the direction and under the control of Flatiron" (*Id.* at ¶ 111). The only support for the allegation of control is based on a generic disclosure on the HasTraffic webpage that does not reference Flatiron. *Id.* at ¶ 110.

Plaintiffs never allege that Flatiron directed or was even aware of HasTraffic's alleged violations of the TCPA, but instead allege that "the violations of HasTraffic in the course of marketing for Flatiron can reasonably be imputed to Flatiron." *Id.* at ¶ 113. Plaintiffs also allege that "given the widespread and pervasive TCPA violations in messages purporting to offer rewards and sweepstakes, Flatiron had reason to carefully scrutinize the marketing activities of HasTraffic"

(*Id.* at ¶ 114), and "[b]y accepting 'leads' that came by way of HasTraffic's unlawful telemarketing, where Flatiron had reason to know of the violations, Flatiron ratified HasTraffic's TCPA violations" (*Id.* at ¶ 117).

## III.   ARGUMENT

The allegations in Plaintiffs' FAC against Flatiron are nothing more than bare conclusory assertions, alleged solely on information and belief, and are completely devoid of any specific facts demonstrating that HasTraffic, in allegedly violating the TCPA, acted on behalf of or at the direction of Flatiron. And the few factual allegations related to Flatiron—that Flatiron is not identified in the text messages or the links to those text messages, and that Flatiron discloses on its website that it is TCPA compliant and prominently identifies itself on a website Plaintiffs claim to have visited—are inconsistent with arguments that Flatiron gave HasTraffic actual or apparent authority to violate the TCPA, or that it ratified such conduct.

### A.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plausible claim to relief must contain more than "labels and conclusions." *Id.* at 555. "[T]he tenet that a court must accept as true" a complaint's allegations does not apply to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If, after separating the complaint's well-pleaded factual allegations from its conclusory allegations and "draw[ing] on its judicial experience and common sense," the Court cannot "draw the reasonable inference that the defendant is liable for the misconduct alleged," then the complaint must be dismissed. *Id.* at 678-79.

### B. Courts Routinely Dismiss TCPA Claims Where Plaintiffs Fail to Assert More Than Conclusory Allegations

Where, like in the instant action, plaintiffs have not pled more than conclusory allegations with respect to their TCPA claims, courts routinely dismiss such claims. The Court should do the same here.

For example, in *Hale*, the plaintiffs alleged receipt of numerous prerecorded phone calls from multiple unknown numbers after they placed their phone numbers on the National DNC Registry ("DNC Registry"). *Hale v. Teledoc Health, Inc.*, No. 20 CV 5245 (VB), 2021 WL 1163925 (S.D.N.Y. Mar. 25, 2021). In order to determine who was responsible for the calls, the plaintiffs allegedly spoke with live agents who offered them quotes for an insurance product called MyBenefitsKeeper, which was marketed by Health Insurance Innovation, Inc. ("HII"). *Id.* Following their calls, the plaintiffs allegedly received emails from HII that contained a MyBenefitsKeeper plan that stated it included a membership to Teledoc. *Id.* Plaintiffs filed a TCPA claim against Teledoc, alleging that though HII, which operated an outbound call center, actually made the calls, pursuant to an alleged contract between HII and Teledoc, and Teledoc gave HII actual and apparent authority to make the calls and ratified HII's conduct. *Id.* at *2.

The court disagreed, granting Teledoc's motion to dismiss and finding that the plaintiffs did not plausibly allege an actual authority relationship between Teledoc and HII because "[t]he complaint contain[ed] no factual allegations raising an inference that Teledoc exercised any control over HII's calls to plaintiffs." *Id.* at *4. The court noted that "[t]he only alleged link between Teledoc and the calls at issue is that Teledoc's services were included in the insurance bundle sold by HII[,]" but noted that "the inclusion of Teledoc's services in HII's insurance bundle, alone, is insufficient to permit even a circumstantial inference that HII called plaintiffs at Teledoc's direction or subject to Teledoc's control." *Id.*

The court also held that plaintiffs did not plausibly allege an apparent authority relationship between Teledoc and HII, finding that "plaintiffs fail[ed] to allege Teledoc manifested that HII was its agent or took any action to induce plaintiffs to believe HII was Teledoc's agent." *Id.* at \*5. The court additionally held that Teledoc did not ratify HII's conduct. *Id.* The court determined that "[p]laintiffs' conclusory allegation that Teledoc accepted the benefits of HII's unlawful marketing is insufficient to allege Teledoc ratified HII and its lead generators' conduct." *Id.*

Similarly, in *Vivint Solar*, the court also found a plaintiff's vicarious liability TCPA claim insufficient where the plaintiff only raised conclusory allegations against the defendant. There, the plaintiff allegedly received a prerecorded and unsolicited call on his cellular phone from an unknown number. *Bank v. Vivint Solar Inc.,* No. 18-CV-2555, 2019 WL 1306064, \*4 (E.D.N.Y. March 22, 2019). While on the call, the plaintiff provided the person to whom the call was transferred with an alias and the transferee told the plaintiff that an unspecified person would call him back. *Id.* Shortly after, the plaintiff allegedly received another call on the same phone from an individual, Joshua Lilly, who was an employee of the defendant and asked to speak with a person by the name of the alias that plaintiff had earlier provided. *Id.* During this second call, Lilly allegedly stated that the defendant regularly utilizes calls in which, upon being answered, prerecorded material advertises the defendant's services. *Id.* The plaintiff alleged an apparent authority theory TCPA claim, claiming that Vivint Solar "placed, or directed to be placed," the prerecorded call. *Id.*

The court disagreed, finding that "[p]laintiff does not assert any non-conclusory allegations with respect to Defendant's alleged agency relationship or Defendant's alleged control over its purported agent." *Id.* at \*4. The court also determined that because the alleged prerecorded call "did not include the name, address, or telephone number of the person or entity on whose behalf

the [p]rerecorded [c]all was placed[,]" there were "no factual allegations to support the conclusory statement that Defendant placed or directed the placement of the [p]rerecorded [c]all." *Id.*

As an even further example, in *Melito*, the plaintiff alleged that Experian was liable for the alleged conduct of a texting platform, Archer USA, Inc. ("AEO"). *Melito v. Am. Eagle Outfitters, Inc.,* No. 14-CV-02440 (VEC), 2015 WL 7736547 (E.D.N.Y. Nov. 30, 2015). There, plaintiff alleged that "'Experian had control over the texts sent' insofar as Experian contracted with AEO to send the texts, received the campaign request form and the campaign ready file from AEO, sent the information to Archer to use Archer's platform, scheduled the text messages to be sent, and sent AEO reports on the results of the text messaging campaigns." *Id.* at *2. The plaintiff also contended that "to the extent that Experian is not directly liable, it is vicariously liable for the actions of Archer to the extent that Archer is deemed to have sent the texts. Archer is Experian's agent because Experian used Archer's texting platform to send the texts." *Id*. Yet again, the Court disagreed and granted the motion to dismiss. *Id.* at *7 ("Mere conclusory allegations that Archer was Experian's agent or that Experian had the right to control the sending of the texts, without more, fails to plead an agency relationship (between Experian and Archer or any other entity) sufficient to allege vicarious liability under section 227(b)(1)(A)(iii) of the TCPA.").

And finally, in *Caribbean Cruise Lines*, the plaintiff alleged that "he received an unsolicited text message on his cellular telephone from the email address, nixcyzqienkm@mytextalerts.net. The text message [] read: "Enjoy your Two Cruise Tickets! Call to claim 954 507 7628." *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 133 (E.D.N.Y 2015). According to the plaintiff, Adsource sent the text message to the plaintiff's cellular phone on behalf of Caribbean Cruise Lines ("CCL") and CCL "'is responsible for making or causing the making of the textmessage calls;' 'CCL contracted with Adsource to make text message calls to

consumers cellular telephone numbers'; and 'Adsource sent the text message calls on behalf of, and at the direction of CCL.'"" *Id.* at 138. The court again disagreed, noting that "the existence of a contract between CCL and Adsource—even one that imposes certain constraints on Adsource—does not necessarily mean that CCL had the power to give 'interim instructions' to Adsource, the hallmark of an agency relationship." The court granted the motion to dismiss. *Id.* ("[E]ven viewing the allegations in a light most favorable to the Plaintiff and drawing all reasonable inferences in its favor, as the Court must on a motion to dismiss, the Court concludes that the Plaintiff's non-conclusory allegations with regard the agency relationship between CCL and Adsource fail to 'nudge' his claims against CCL 'across the line from conceivable to plausible . . . .'").

### C. The FAC Fails To Plausibly Allege That Flatiron Is Liable for Sending the Text Messages That Plaintiffs Allegedly Received from HasTraffic.

#### 1. The FAC Concedes That Flatiron Is Not Directly Liable.

In order for a plaintiff to assert a viable claim under Section 227(c)(5), they must sufficiently allege that the defendant (1) initiated more than one "telephone solicitation call"[4] within a 12-month period; (2) to a "residential telephone subscriber who has registered his or her telephone number" on the DNC Registry; (3) without the prior consent of the recipient. *Gillam v. Reliance First Cap.*, LLC, No. 21-CV-4774 JMAJMW, 2023 WL 2163775, at *2 (E.D.N.Y. Feb. 22, 2023).

Plaintiffs here repeatedly and exclusively plead that HasTraffic sent text messages "on behalf of Flatiron." FAC at ¶¶ 20, 32- 33, 53, 77, 83, 95, 101.[5] Accordingly, Plaintiffs effectively admit that Flatiron has no direct liability under the TCPA. *See Banks v. Pro Custom Solar*, 416 F.

---

[4] Courts in the Second Circuit treat text messages as "calls" within the meaning of the TCPA. *See, e.g.*, *Melito*, 2015 WL 7736547, at *4.
[5] The FAC does contain a typo remaining from the Initial Complaint alleging that Flatiron sent text messages. FAC at ¶ 54. It is clear this is a typo given that the factual allegations in the FAC only allege HasTraffic sent texts.

Supp. 3d 171, 173 (E.D.N.Y. 2018) (explaining that "for direct liability, a plaintiff must allege that a defendant initiated an unlawful call in order to state a plausible claim.").

### 2. The FAC Does Not Plausibly Allege That Flatiron Is Vicariously Liable for HasTraffic's Alleged Conduct.

As with the claims in each of the four cases cited above, Plaintiffs conclusory allegations and threadbare conclusions that Flatiron is vicariously liable fail. Although the Second Circuit does not appear to have addressed the issue, other courts have held that, in certain narrow circumstances, the TCPA permits vicarious liability based on the federal common law of agency. *See, e.g.*, *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018); *Caribbean Cruise Lines*, 88 F. Supp. 3d at 137. There are three potentially applicable agency theories under which a principal may be liable for its agent's conduct: (1) actual authority; (2) apparent authority; and (3) ratification. *See Kristensen*, 879 F.3d at 1014; *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018); *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 357 (7th Cir. 2020). Consistent with the authority cited above, Plaintiffs' conclusory allegations fail to state a claim under any of these theories.

### a. Plaintiffs Fail to Sufficiently Plead That Flatiron Provided HasTraffic "Actual Authority" to Transmit Unlawful Texts.

To plead a viable theory of actual authority under the TCPA, Plaintiffs must plead sufficient facts to satisfy three elements: (1) an agency relationship existed between Flatiron and HasTraffic (*i.e.*, that Flatiron had a right to "control" HasTraffic's actions); (2) Flatiron instructed HasTraffic by way of either a "written or oral communication," to send Plaintiffs text messages; and (3) Flatiron instructed HasTraffic to send text messages that Flatiron knew to be "unlawful." *Jones*, 887 F.3d at 449; *see also Caribbean Cruise Lines*, 88 F. Supp. 3d at 138-40; *Warciak*, 949 F.3d at 357; *Canary v. Youngevity Int'l, Inc.*, No. 18-CV-03261, 2019 WL 1275343, at *5 (N.D. Cal. Mar. 30, 2019); *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 68 (2d Cir. 2003) ("actual

-9-

authority" "exists only where the . . . words or conduct of the principal" reasonably show that "the principal has consented to the agent's performance of a particular act"). Plaintiffs fail to allege facts sufficient to plead *any* of these elements, despite bearing the burden of plausibly alleging all three.

### i. The FAC Fails to Allege Control Sufficient to Establish a Principal-Agent Relationship.

As the Second Circuit has explained, "[a]n essential characteristic of an agency relationship is that the agent acts subject to the principal's direction and control." *In re Shulman Transp. Enters., Inc.*, 744 F.2d 293, 295 (2d Cir. 1984). Accordingly, there can be no principal-agent relationship if the alleged principal "lacked the authority 'to control the detailed physical performance'" of the alleged agent. *Leone v. United States*, 910 F.2d 46, 49 (2d Cir. 1990). That is, "[t]he power to give interim instructions [governing the agent's actions] distinguishes principals in agency relationships from those … [with] [non-]agents." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 278 (2d Cir. 2013) (quoting Third Restatement of Agency § 1.01 cmt. f).

As in *Hale*, *Vivint Solar*, *Melito*, and *Caribbean Cruise Lines*, the FAC fails to allege control sufficient to establish a principal-agent relationship between Flatiron and HasTraffic. The FAC merely alleges, on information and belief, that Flatiron had a contract with HasTraffic whereby Flatiron "retained the ability to substantially control the marketing activities of HasTraffic." FAC at ¶ 108. This allegation is conclusory, and fails to plausibly establish that Flatiron controlled HasTraffic in any way whatsoever, let alone to violate the TCPA. Indeed, Plaintiffs' FAC does not offer the Court *any* facts demonstrating how Flatiron controlled HasTraffic, and specifically not as it pertains to HasTraffic allegedly sending Plaintiffs unlawful text messages. Indeed, it never alleges Flatiron instructed HasTraffic to violate the TCPA or even that Flatiron knew HasTraffic was allegedly violating the TCPA. This speculation does not

establish the required "control" over HasTraffic. *See, e.g.*, *Melito*, 2015 WL 7736547, at *7 (dismissing TCPA claim after finding plaintiffs' claim alleging that principal "had the right to control the sending of the texts" and "in fact controlled and even scheduled the sending of each segment of the texts," to be conclusory); *Cunningham v. Channer, LLC*, No. 17-CV-1305-FPG, 2018 WL 4620391, at *6 (W.D.N.Y. Sept. 26, 2018) (denying plaintiff's motion for default judgment because plaintiff's allegation that defendant entered into "written contract with the calling party and knows that they will make illegal calls to harass and intimidate consumers" was conclusory).

    **ii.**  **The FAC Does Not Plausibly Allege That Flatiron Communicated to HasTraffic That It Should Send Plaintiffs Text Messages.**

The FAC also fails to even allege that Flatiron made a "written or oral communication" or "general statement" instructing HasTraffic to text Plaintiffs. *Jones*, 887 F.3d at 449 (explaining that, in the TCPA context, "actual authority" requires "more than establish[ing] an agency relationship," as the party "must also establish actual authority to place the unlawful calls"). The absence of an allegation that Flatiron expressly instructed HasTraffic, whether by written or oral communication, to allegedly send the Plaintiffs text messages is fatal to Plaintiffs' actual authority theory. *See id.*; *see Hale*, 2021 WL 1163925, at *4 (finding that plaintiff could not establish that defendant had given the alleged agent actual authority, which was evidenced by defendant's lack of written or oral communication to the agent to take certain actions).

    **iii.**  **The FAC Does Not Plausibly Allege That Flatiron Authorized HasTraffic to Knowingly Violate the TCPA.**

Courts have found that a theory of actual authority under the TCPA requires that a principal knowingly instructed an agent to place "unlawful" calls. *Jones*, 887 F.3d at 449; *Goodell v. BH Auto., LLC*, No. CV-20-01657-PHX-JJT, 2023 WL 2691452, at *3 (D. Ariz. Mar. 29, 2023)

(applying *Jones*); *Stark v. Stall*, No. 19-CV-00366-AJB-AHG, 2021 WL 1978472, at *3 (S.D. Cal. May 18, 2021) (same). Here, Plaintiffs fail to plead *any* facts showing that Flatiron instructed HasTraffic to send unlawful texts, let alone that Flatiron knew that HasTraffic texting Plaintiffs would be unlawful. The only allegation even arguably made by Plaintiffs pertaining to Flatiron's knowledge of HasTraffic's alleged unlawful conduct is that Plaintiffs claim that "given the widespread and pervasive TCPA violations in messages purporting to offer rewards and sweepstakes, Flatiron had reason to carefully scrutinize the marketing activities of HasTraffic . . . ." FAC at ¶ 114. This allegation falls far short of the requirement that Plaintiffs are required to satisfy: that Flatiron *knowingly* instructed HasTraffic to violate the TCPA. *See, e.g.*, *Stark*, 2019 WL 3718878 at *6 (dismissing complaint absent allegations that the defendant directed the caller to make telephone calls on his behalf that violate the TCPA).

        **b.**      **Plaintiffs Fail in The FAC to Adequately Plead That They Relied on HasTraffic's "Apparent Authority" to Send Unlawful Text Messages on Behalf of Flatiron.**

"Apparent authority arises from the written or spoken words or any other conduct of the principal which, reasonably interpreted, causes a third person to believe that the principal consents to have an act done on his behalf by the person purporting to act for him." *FAT Brands Inc. v. PPMT Cap. Advisors, Ltd.*, No. 19-CV-10497 (JMF), 2021 WL 37709, at *6 (S.D.N.Y. Jan. 5, 2021) (Furman, J.). "Essential to the creation of apparent authority" "are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction." *Id.* That is, "apparent authority is created only by the representations of the principal to the third party"; thus, "the agent cannot confer authority upon himself or make himself an agent simply by saying that he is one." *Id.*

Plaintiffs do not plausibly allege words or conduct of Flatiron, communicated to HasTraffic, that would give rise to the appearance and belief that HasTraffic should violate the

-12-

TCPA by sending Plaintiffs text messages. Indeed, Plaintiffs do not allege that Flatiron even knew of HasTraffic's purported violations. And, to the contrary, Plaintiffs' admissions that Flatiron represents on its website that it is TCPA compliant, and that it prominently discloses its identity, address, and privacy policy on its webpage, rebut any suggestion that it would provide apparent authority for HasTraffic to send unlawful text messages on its behalf. The absence of any specific allegations in the FAC that Flatiron represented (through oral or written communications or its conduct) to HasTraffic that it should send unlawful texts to Plaintiffs is grounds for the Court to find Plaintiffs failed to state a TCPA claim under an apparent authority theory. *See, e.g.*, *Vivint Solar*, 2019 WL 1306064, at *4 (dismissing a TCPA claim under an apparent authority theory because plaintiff only offered the court conclusory allegations pertaining to defendant's alleged agency relationship over the purported agent).

### c. Plaintiffs Fail to Sufficiently Plead in the FAC That Flatiron "Ratified" HasTraffic's Conduct.

Plaintiffs assert in a conclusory manner that Flatiron "ratified HasTraffic's TCPA violations" "[b]y accepting 'leads' that came by way of HasTraffic's unlawful telemarketing." FAC at ¶ 117. Plaintiffs also claim that Flatiron "hired, encouraged, permitted, and enjoyed the benefits of mass spam-marketing by HasTraffic." *Id.* at ¶ 118. Plaintiffs' ratification theory fails for four reasons.

*First,* although a principal can "ratify" an agent's unauthorized actions undertaken without "actual authority," a threshold requirement for ratification is the existence of an *agency relationship. See, e.g.*, *Hamm v. United States*, 483 F.3d 135, 140 (2d Cir. 2007) (noting that "a principal may become liable for its agent's unauthorized acts by adopting the agent's actions…."). Courts have explained that in the TCPA context, "an agency relationship … is a necessary element of ratification," and dismissal is required where, as here, a "plaintiff has failed to allege any

nonconclusory facts to establish an agency relationship between defendant and the maker of the [calls]." *Vivint Solar*, 2019 WL 2280731, at *5 (collecting cases). As discussed above, Plaintiffs have failed to plausibly allege such an agency relationship of "control," and have failed to plead a claim under a ratification theory.

*Second*, Plaintiffs fail to plead facts alleging that Flatiron "*accept[ed] . . . the benefits* of an agent's acts, with full knowledge of the facts." *Id.* Specifically, Plaintiffs fail to allege that Flatiron knew HasTraffic was violating the TCPA by texting Plaintiffs and approved of such conduct. *See Hale*, 2021 WL 1163925, at *4 (dismissing plaintiff's TCPA claim based on a ratification theory because plaintiff did not establish that defendant accepted any benefits of the alleged agent's unlawful actions).

*Third*, Plaintiffs must allege that Flatiron made some external manifestation that "evidence[d] an intention to ratify" HasTraffic's conduct. *Phelan v. Local 305 of United Ass'n of Journeymen, & Apprentices of Plumbing*, 973 F.2d 1050, 1062 (2d Cir. 1992). Allegations that Flatiron passively continued to allow HasTraffic to send text messages to individuals generally as part of their alleged contractual agreement is insufficient to manifest ratification of the acts to Plaintiffs. *See id.* The FAC does not allege external manifestation.

*Fourth*, Plaintiffs must plead facts showing that Flatiron *knew* that HasTraffic was sending unlawful text messages and assented to HasTraffic's continued violations. Plaintiffs suggest that *constructive* knowledge—that Flatiron "should have known" of the risk of HasTraffic engaging in marketing activities given "the widespread and pervasive TCPA violations"—is sufficient. FAC at ¶ 114. But "ratification can only occur when the principal [has] *knowledge* of the material facts." *Rodonich v. House Wreckers Union Local 95*, 817 F.2d 967, 973 (2d Cir. 1987) (emphasis added). Accordingly, in the TCPA context, ratification "requires acceptance by the principal of the benefits

of an agent's acts, with *full knowledge of the facts*…." *Vivint Solar*, 2019 WL 2280731, at *5 (emphasis added). Plaintiffs fail to plead any facts showing that Flatiron had "full knowledge" that HasTraffic had sent any texts on its behalf in violation of the TCPA.

Plaintiffs, therefore, have not sufficiently plead any facts that would allow the Court to find that Plaintiffs have raised a legitimate TCPA claim against Flatiron, and their claim should be dismissed.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' FAC should be dismissed with respect to Flatiron.

Dated: New York, New York.
       June 2, 2023

Respectfully submitted,

PERKINS COIE LLP

By: */s/ Dennis C. Hopkins*
    Dennis C. Hopkins
    LaMarte Williams, Jr.
    1155 Avenue of the Americas, 22nd Floor
    New York, New York 10036-2711
    Telephone: 212.262.6900
    Fax: 212.977.1649
    Email: DHopkins@perkinscoie.com
    Email:LaMarteWilliams@perkinscoie.com

    James G. Snell, admitted pro hac vice
    3150 Porter Drive
    Palo Alto, California 94304-1212
    Telephone: 650.838.4300
    Fax: 650.838.4350
    JSnell@perkinscoie.com

    *Attorneys for Defendant FLATIRON MEDIA, LLC*