# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON CARRODINE, ELI REISMAN, [insert] *individually and on behalf of all others similarly situated,* | Case No.: 1:22-cv-09660-JMF |
| Plaintiff, | |
| v. | |
| FLATIRON MEDIA, LLC and HASE.COM LLC f/k/a UNLIMITED TRAFFIC LLC d/b/a "HasTraffic", | Jury Trial Demanded |
| Defendants. | |

**PLAINTIFFS' REPSONSE IN OPPOSITION TO DEFENDANT
FLATIRON MEDIA, LLC'S MOTION TO DISMISS**

BY: KIMMEL & SILVERMAN, PC

Craig T. Kimmel
Jacob U. Ginsburg (*pro hac vice*)
30 East Butler Ave.
Ambler, PA 19002
Phone: (215) 540-8888 ext. 148
Facsimile: (877) 788-2864
Email: kimmel@creditlaw.com
jginsburg@creditlaw.com
teamkimmel@creditlaw.com

BUTSCH ROBERTS & ASSOCIATES LLC

Christopher E. Roberts (*pro hac* pending)
231 S. Bemiston Avenue, Suite 260
Clayton, Missouri 63105
Telephone: (314) 863-5700
Facsimile: (314) 863-5711
Email:  CRoberts@butschroberts.com

# TABLE OF CONTENTS

I.     INTRODUCTION……………………………………..…………………………1

II.    STATEMENT OF RELEVANT FACTS AS SET FORTH IN
       FIRST AMENDED COMPLAINT………………………………..…..……………..2

III.   ARGUMENT ……………………………………………………………5

       A.  Applicable standard……………………………………………………5

       B.  Plaintiffs plead the elements of their TCPA claim……………………………6

IV.    CONCLUSION………………………………………………………..17

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662, (2009)……………………………………….…………………5

*Bank v. CreditGuard of Am.*, 2019 WL 1316966 (E.D.N.Y. Mar. 22, 2019)……………………14

*Bank v. Vivint Solar Inc.*, No. 18-CV-2555, 2019 WL 1306064 (E.D.N.Y. March 22, 2019)…..17

*Baptiste v. The City Univ. of New York*, 2023 WL 4266914 (S.D.N.Y. June 29, 2023)…………5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)……………………………….…………….………5

*Berman v. Freedom Financial Network,* 30 F.4th 849 (9th Cir. 2022)…………………………..12

*Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021)………………………………….…..14-16

*Braver v. Northstar Alarm Servs., Ltd. Liab. Co.*, 2017 WL 11139779
       (W.D. Okla. Aug. 25, 2017)…………………………………………………….……15

*Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147 (N.D. Ill. 2014)……………………………..15

*Cunningham v. Capital Advance Sols., LLC,* 2018 WL 6061405, (D.N.J. Nov. 20, 2018)………9

*Cunningham v. Foresters Fin. Servs., Inc.,* 300 F. Supp. 1004, 1016 (N.D. Ind. 2018)…..……15

*Gaker v. Citizens Disability, LLC*, __ F.Supp.3d __2023 WL 1777460 (D. Mass. 2023)…...11-12

*Gould v. Farmers Ins. Exch.*, 288 F. Supp. 3d 963 (E.D. Mo. 2018)…………………………10

*Hale v. Teledoc Health, Inc*., 2021 WL 1163925 (S.D.N.Y. Mar. 25, 2021)……………………16

*Henderson v. United Student Aid Funds, Inc*., 918 F.3d 1068 (9th Cir. 2019)…….................10-11

*Jenkins v. Nat'l Grid USA*, 2017 WL 1208445 (E.D.N.Y. Mar. 31, 2017)………………………8

*Khodeir v. Sayyed*, 348 F. Supp. 3d 330, 345 (S.D.N.Y. 2018)……………………….…..……8

*McCabe v. Caribbean Cruise Line, Inc*., 2014 WL 3014874 (E.D.N.Y. July 3, 2014)…….....…8

*McCurley v. Royal Seas Cruises, Inc.,* 2022 WL 1012471 (9th Cir. Apr. 5, 2022)………..……11

*Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547 (E.D.N.Y. Nov. 30, 2015)……………17

*Metten v. Town Sports Int'l, LLC*, 2019 WL 1299939 (S.D.N.Y. Mar. 21, 2019)…………..……13

*Mestas v. CHW Grp. Inc.*, 508 F. Supp. 3d 1011 (D.N.M. 2020)………………………………9-10

*Mey v. Patriot Payment Grp*., LLC, 2016 WL 11501451 (N.D.W. Va. July 26, 2016)……..….15

*Rose v. New Tsi Holdings, Inc.*, No. 21-CV-5519 (JPO), 2022 WL 912967 56525
 (S.D.N.Y. Mar. 28, 2022),…………………………………………………………………… 8

*Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 325 (D. Mass. 2020)……………..11

**STATUTES, ADMINSITRATIVE RULES AND REGULATIONS**

47 U.S.C. § 227 et seq……………………………………………………………...…. passim

47 C.F.R. § 64.1200……………………………………………………..……….…passim

*In re DISH Network, LLC* , 28 FCC Rcd 6574,………………………..………….....passim

Fed. R. Civ. P. 8……..……………………………………………..……….…passim

Fed. R. Civ. P. 12…..……………………………………………………..……….…passim

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT
FLATIRON MEDIA LLC'S MOTION TO DISMISS**

COMES NOW Plaintiffs Jason Carrodine ("Carrodine"), Eli Reisman ("Reisman"), and Kimberly Hudson ("Hudson") (collectively "Plaintiffs"), file their response in opposition to the Motion to Dismiss their First Amended Complaint ("FAC") filed by Defendant Flatiron Media, LLC ("Flatiron"). Doc. No. 48.

## I.      INTRODUCTION

Defendant Flatiron Media is a consumer data-broker and digital marketing company, that acquires and sells consumer data it acquires through websites purporting to offer "sweepstakes" and rewards. Flatiron hired a third-party vendor, Co-Defendant Has.E.com LLC ("HasTraffic"), for a mass-nationwide text message marketing operation.  Flatiron was happy to acquire all the "leads" and traffic from its co-Defendant's campaign carried out its Flatiron's behalf.  Nonetheless, Flatiron attempts to avoid liability under the TCPA by (1) outsourcing its telemarketing operations to HasTraffic; and (2) attempting to capitalize on the fact Plaintiffs do not the minutiae of its contract with HasTraffic before the commencement of formal discovery. While Flatiron is the party that informed Plaintiffs' counsel of its relationship with HasTraffic, it has nonetheless refused repeated requests to produce the contract at issue.[1] In other words, Flatiron seeks to be the beneficiary of its own opacity and attempts to impose upon insurmountable standards at the pleading stage fundamentally at odds with the requirements of Rule 8.

The named Plaintiffs, who reside all the way from Nevada to New Jersey and back down to Texas, all received numerous similar spam text messages that were sent on Flatiron's behalf, as

---

[1] *See* Doc. No. 17; Doc. No. 18, p. 5, item 19; *but see* Doc. No. 50.  Plaintiff requests the Court take judicial notice of filings on the docket for this matter, pursuant to FRE 201.

did thousands of consumers nationwide. Each of these numerous text messages directed the plaintiffs to a Flatiron website. Despite Flatiron's public statements taking ownership of the SMS message campaigns and HasTraffic's affirmative representation on its website that its clients have "control over the text and the ability to pre-approve the copy" of text message advertisements, Flatiron somehow contends that it cannot be held vicariously liable under the TCPA.

Flatiron contends Plaintiffs' complaint should be dismissed because Plaintiffs purportedly "shoots first" and "asks questions later." Doc. 47, p. 5.  However, Flatiron refuses to produce the operative contract before commencement of formal discovery, then bases an entire motion to dismiss on the premise that Plaintiffs fail to plead the minute details of the Defendants' contractual relationship.  If a shooting metaphor is appropriate, it would be Flatiron blindfolding Plaintiffs and then seeking to penalize them for their marksmanship.  Nonetheless, Plaintiffs shoot and hit the target. The plain language of the TCPA, the FCC's holdings, and cases from this Court and nationwide make clear that Flatiron can be held vicariously liable for the acts of its agents.

For the reasons set forth below, Flatiron's motion to dismiss should be denied.

## II.   STATEMENT OF RELEVANT FACTS AS SET FORTH IN FIRST AMENDED COMPLAINT

Plaintiff Jason Carrodine resides in Nevada, Plaintiff Reisman resides in New Jersey and Plaintiff Hudson resides in Texas. Doc. 32, at ¶¶ 8-10. The plaintiffs each registered their phone numbers on the National Do-Not-Call Registry to obtain solitude from receiving unwanted telemarketing calls and text messages. *Id.* at ¶¶ 48, 73, 91. The plaintiffs registered their numbers as each of their phones were used primarily for personal purposes. *See id.* at ¶¶ 49, 72, 92.

Flatiron is a "lead generation company." *Id.* at ¶¶ 13, 37-38. To generate leads, Flatiron operates websites that purport to offer consumers opportunities to claim prizes, rewards and to

enter sweepstakes. *Id.* at ¶ 14. Flatiron represents that it can assist its clients with customer acquisition through "SMS communications."[2] *Id.* at ¶ 37.

Flatiron represents on its website that its "lead generation" services are "TCPA compliant." *Id.* at ¶ 38. Flatiron further represents on its website that it generates more than "50 million client leads year after year" and that some of these leads are generated through "SMS [campaigns]." *Id.* at ¶ 39. To achieve its marketing objectives, Flatiron states on its website that it uses "3rd party and proprietary systems." *Id.* at ¶ 41. The "third-party" Flatiron hired to implement its aggressive text messaging campaign was Co-Defendant HasTraffic. *Id.* at ¶¶ 42, 108.[3] HasTraffic is company that performs SMS text message marketing. *Id.* at ¶ 43. HasTraffic uses SMS text messages to generate leads and increase traffic to websites such as those operated by Flatiron. *See id.* at ¶¶ 20, 43.

The agreement between Flatiron and HasTraffic provides that Flatiron will pay HasTraffic based on the number of "leads" generated for Flatiron or the quantity of traffic to Flatiron's websites. *Id.* at ¶ 108.

The agreement provides Flatiron the right to substantially control HasTraffic's marketing activities. *Id.* at ¶ 109. To this end, HasTraffic represents on its website that "the advertiser has

---

[2] "SMS" stands for "Short Message Service" and refers to standard text messages sent to cell phones. (Doc. 32, ¶ 40).

[3] Flatiron purports to take issue with Plaintiffs alleging "on information and belief" that Flatiron entered into a contract with HasTraffic and that Flatiron encouraged, permitted and enjoyed the benefits of HasTraffic's mass text message marketing campaign. Doc. 47, p. 7.  However, that objection from Flatiron appears disingenuous, as Flatiron disclosed its contractual relationship with HasTraffic and informed Plaintiffs' counsel HasTraffic sent the messages in connection with their agreement, yet despite multiple requests from Plaintiffs' counsel, has refused to produce that contract with HasTraffic. Doc. 50, p. 2.

control over the text and the ability to pre-approve the copy." *Id.* at ¶ 110. HasTraffic's website also states that it will send a "short text with a short link." *Id.*

Each of the Plaintiffs received text messages with cryptic links that ultimately connected the to a Flatiron website. *See id.* at ¶¶ 61-63, 66, 82, 84 100, 103. The websites all contained the statement, "Welcome to one of Flatiron Media's suites of content and promotions websites." *Id.* at ¶¶ 61, 82, 100. The website to which Plaintiff Carrodine was directed also stated, "Everyday Winner is a trademark of Flatiron Media, LLC" and includes a privacy policy titled "Flatiron Privacy Policy." *Id.* at ¶¶ 62-63. Moreover, Plaintiff Reisman continued to receive text messages despite requesting that the text messages stop. *Id.* at ¶¶ 85-87.

Consistent with the representations on the website of Flatiron's vendor, Plaintiffs Carrodine and Hudson were sent short text messages with "short links", each of which ultimately connected to a Flatiron website. *See id.* at ¶¶ 61-63, 66, 100, 103. While the text messages Plaintiff Reisman's received were longer than those received by Plaintiffs Carrodine and Hudson, the texts he received also included links that connected him to a Flatiron website. *See id.* at ¶¶ 82, 84.

Plaintiffs are not the only ones to have received such unwanted text messages. One consumer made a complaint on Flatiron's Better Business Bureau profile, stating, "Whoever these people are need to stop because they text me several times a day offering gifts and money." *Id.* at ¶ 116. HasTraffic sent thousands of spam text messages on Flatiron's behalf to Plaintiffs and the putative class members. See id. at ¶¶ 46, 124, 131. Accordingly, Plaintiffs subsequently filed the instant putative class action case under the TCPA. *Id.* at ¶¶ 121-144.

## III.   ARGUMENT

### A.   Applicable Standards

Federal Rule of Civil Procedure 8(a)(2) prescribes that a complaint allege "a short and plain

statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead facts to "state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible where a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). The court "must accept the factual allegations set forth in the complaint as true and draw reasonable inferences in favor of the plaintiff." *Baptiste v. The City Univ. of New York*, 2023 WL 4266914, at * 2 (S.D.N.Y. June 29, 2023). The court will therefore "not dismiss any claims unless the plaintiff has failed to plead sufficient facts to state a claim to relief that is facially plausible." *Id.*

**B.**     **Plaintiffs plead the elements of their TCPA claim.**

A TCPA claim under Section 227(c)(5) is established where: (1) a person receives more than one telephone call from "or **on behalf of**" an entity; (2) within a 12-month period; (3) to a "residential telephone subscriber" who (4) has registered their phone number on the National Do-Not-Call Registry. 47 U.S.C. § 227(c)(5) (emphasis added); 47 C.F.R. § 64.1200(c)(2). Flatiron does not challenge that the First Amended Complaint states a claim *per se*, but nonetheless contends the FAC not adequately allege that Flatiron is "responsible for HasTraffic's alleged sending of unsolicited marketing text messages." Doc. 47, p. 5.

However, as set forth below, Plaintiffs allege numerous facts that establish Flatiron's ability to direct and control the business activities of HasTraffic, which sent the offending marketing messages to Plaintiffs on Flatiron's behalf.  Accordingly, Plaintiffs sufficiently allege Flatiron is vicariously liable under the theory of actual authority. The FAC also alleges, with supporting facts,that Flatiron had reason to know of HasTraffic's violations in the course of

sending marketing messages on Flatiron's behalf. Accordingly, Plaintiffs sufficiently allege Flatiron is vicariously liable under the theory of ratification.

Without having had the benefit of discovery, a plaintiff cannot reasonably be expected to know the intricate details of a contractual relationship *between two defendants* at the pleading stage. Nonetheless, Flatiron seeks to hold Plaintiffs to an insurmountable standard, that is fundamentally at odds with Rule 8.   Because the FAC asserts a cognizable claim for vicarious liability, Flatiron's motion to dismiss should be denied.

### 1. Flatiron cannot contract its way out of liability by outsourcing its unlawful telemarketing to a third-party agent.

Vicarious liability is written into the plain language of the TCPA. Section 227(c)(5) provides that a TCPA violation is established where a person receives more than one call within a 12-month period "by or **on behalf of** the same entity in violation of the regulations prescribed under this subsection . . . ." 47 U.S.C. § 227(c)(5) (emphasis added). Congress directed the FCC to promulgate and implement rules in connection with the do-not-call rules. 47 U.S.C. § 227(c)(1). Consistent with that mandate, the FCC enacted clear rules to protect consumers whose numbers are registered on the Do Not Call registry from unlawful solicitation calls and texts, imposing penalties on "sellers"[4], on whose behalf calls/texts are placed) and the "telemarketers,"[5] who directly place the calls/texts for sellers:

> Standard dictionary definitions of the phrase "on behalf of" include, among other things, "in the interest of," "as a representative of," and "for the benefit of" - concepts that easily can be read to encompass common law agency principles. More generally, we also find that reading section 227(c) to recognize "on behalf of" liability by sellers for the third-party telemarketing calls that violate the do-not-call

---

[4] Under the TCPA, a "seller" is a "person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging purchase…of…property, goods, or services, which is transmitted to any person. 47 C.F.R. § 64.1200(f)(10).

[5][5] The term "telemarketer" means "the person or entity that initiates a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

rules best implements Congress's express purpose behind those rules - the "[p]rotection of subscriber privacy rights."… Reading section 227(c)(5) to impose vicarious seller liability for do-not-call violations under federal common law agency principles serves these goals.

*In re DISH Network, LLC* , 28 FCC Rcd 6574, 6585 (F.C.C. May 9, 2013). As to the application of vicarious liability, the FCC made it clear the TCPA offered no quarter to sellers who capitalize off the telemarketing violations of third-party vendors:

allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions.

*In re Dish Network*, 28 F.C.C. Rcd. at 6588.

**2.      Plaintiffs plead that Flatiron is vicariously liable for the text messages sent on its behalf by HasTraffic.**

Flatiron argues that the FAC fails to plead sufficient facts to support vicarious liability. *See generally,* Doc. No. 47.  However, as set forth below, Plaintiffs allege a cognizable claim against Flatiron under the vicarious liability theories of actual authority and ratification.

**i.      The FAC states a vicarious liability claim under actual authority**

An "agent acts with actual authority if it 'reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent to act." Restatement (Third) of Agency § 2.01 (2006)." Further,"[a]ctual agency 'does not require the principal to specify the singular acts for which [an agent's] authority exists as long as the acts are incidental to or reasonably necessary to accomplish what is authorized*." Id.*  For an agency relationship to exist, "what matters is that a principal has the "right to control" the agent, not that the principal actually exercised that control."   *Khodeir v. Sayyed*, 348 F. Supp. 3d 330, 345 (S.D.N.Y. 2018) (citing Restatement (Third) of Agency 2.01 cmt. C.

In the TCPA context, Courts within the Second Circuit and throughout the country have found TCPA complaints with substantially fewer substantive allegations as to direction and control by the principal-seller over an agent-telemarketer.   In *Jenkins v. Nat'l Grid USA*, 2017 WL 1208445 (E.D.N.Y. Mar. 31, 2017), the Eastern District of New York held several broad and non-specific allegations of a ability to exercise oversight and control over a calling vendor's collection activities was sufficient to establish an inference of an agency relationship and denied the defendant's motion to dismiss.   *Id*.; *see also McCabe v. Caribbean Cruise Line, Inc*., 2014 WL 3014874, at *4 (E.D.N.Y. July 3, 2014) (holding that a plain allegation that call was made by alleged agent "pursuant to a contract" with principal was sufficient to state claim). Similarly, in *Rose v. New Tsi Holdings, Inc.*, No. 21-CV-5519 (JPO), 2022 WL 912967 56525 (S.D.N.Y. Mar. 28, 2022), Judge Oetken held that the allegation the defendant's services were promoted in the calls/texts is sufficient to state a vicarious liability claim at the pleading stage.

Here, the FAC's allegations go well beyond the subject allegations in *Jenkins* and *McCabe*. Per the FAC, HasTraffic's website states that "**the advertiser** has control over the text and the ability to pre-approve the copy." Doc. 31, ¶ 110.  Moreover, Plaintiffs allege Flatiron agreed to pay HasTraffic based on the number of 'leads' HasTraffic generated for Flatiron /or the quantity of traffic to Flatiron's webpage(s). *Id.* at ¶ 44.  Plaintiffs also allege the contract between Flatiron and HasTraffic affords Flatiron ability to direct and control HasTraffic's marketing activities. *Id.* at ¶ 109.  Plaintiffs corroborate the allegations with a printout from HasTraffic's website which acknowledge "advertisers" such as Flatiron can "control" the content of HasTraffic's SMS text message marketing campaigns. *Id.* at ¶ 110.

A review of the TCPA vicarious liability decisions nationwide further bolster that the allegations in the FAC state a claim under the theory of actual authority against Flatiron. For

instance, in *Cunningham v. Capital Advance Sols., LLC,* 2018 WL 6061405, (D.N.J. Nov. 20, 2018), the plaintiff alleged the telemarketing vendor placed calls for the benefit of the putative principal pursuant to a contractual agreement which authorized such marketing, and that the putative principal paid its telemarketing agent "commission for each and every successful solicitation." *Id.* at *7. The court rejected the defendants' argument those allegations were insufficient at the pleading stage:

> the Court may reasonably infer that the Bank Defendants exercised a certain level of control over, or, at a minimum, were aware of, Capital's telemarketing efforts. In this regard, based on the existence of an alleged agreement, the Bank Defendants contracted with Capital to conduct telemarketing activities and, in so doing, provided Capital with the actual authority to solicit their products.

*Id.* at *7. Here, the FAC describes Flatiron's control over HasTraffic's telemarketing activities.

Multiple other courts reach the same conclusion. In *Mestas v. CHW Grp. Inc.*, 508 F. Supp. 3d 1011 (D.N.M. 2020), the District of New Mexico denied a motion to dismiss where the complaint alleged defendants "approved, wrote, or reviewed the script used by the telemarketers during those calls" 508 F. Supp. 3d 1011, 1025. *See also Mohon v. Nat'l Cong. of Emplrs., Inc.*, 2020 WL 1332376, at 6 (D.N.M. Mar. 23, 2020) ("Plaintiff has sufficiently alleged potential vicarious liability, claiming, among other things, that Defendants authorized, directed and initiated Jane Doe callers to … to contact Plaintiff.") Similarly in *Gould v. Farmers Ins. Exch.*, 288 F. Supp. 3d 963 (E.D. Mo. 2018), the court denied the defendant's motion to dismiss a vicarious liability claim where the plaintiff alleged Farmers' Insurance "could oversee its agents' advertising efforts, even to the extent of controlling the conduct and content of text message advertising." *Id.* at 969.

Going to the same degree or beyond the ability to direct and control in the cases above, Plaintiffs cite HasTraffic's website to support the control described where HasTraffic broadcasts

"**the advertiser** has control over the text and the ability to pre-approve the copy." Doc. 31, ¶ 110.

Moreover, Plaintiffs allege Flatiron agreed to pay HasTraffic based on the number of 'leads'

HasTraffic generated for Flatiron /or the quantity of traffic to Flatiron's webpage(s). *Id.* at ¶ 44.

Plaintiffs go beyond the allegations that were rendered sufficient in the above cases and

the FAC states a claim under the vicarious liability theory of actual authority.

ii.     **The FAC pleads vicarious liability under the theory of ratification**

The FAC also states a claim under the theory of ratification. Under the doctrine of

ratification, "[i]f the purported principal is shown to have knowledge of facts which would lead a

person of ordinary prudence to investigate further, and he fails to make such investigation, his

affirmance without qualification is evidence that he is willing to ratify upon the knowledge which

he has." Restatement (Second) of Agency § 91(1)(1957)).  In the TCPA case *Henderson v. United

Student Aid Funds, Inc*., 918 F.3d 1068, 1073-1074 (9th Cir. 2019), the Ninth Circuit applied the

theory of ratification by "willful blindness." In effect, the principal can ratify the act of a third

party—thereby making the third party the principal's agent—even if it does not know all the

material facts, but it must be aware that it does not know the material facts and ratify anyway."

*Henderson,* 918 F.3d 1068, 1073-1074 (9th Cir. 2019).  As the District of Massachusetts explained

a "seller may be liable for unauthorized conduct of a telemarketer if the seller is aware of the

unauthorized conduct of the telemarketer and fails to terminate its services." *Rosenberg v.

LoanDepot.com LLC*, 435 F. Supp. 3d 308, 325 (D. Mass. 2020).

Applying the theory of ratification, *McCurley v. Royal Seas Cruises, Inc.,* No. 21-55099,

2022 WL 1012471 (9th Cir. Apr. 5, 2022) the Ninth Circuit reversed the district court's order

entering summary judgment in favor of a TCPA defendant cruise company.  *McCurley* held

because a reasonable jury could find the defendant ratified its vendor's telemarketing violations by accepting transferred calls the vendor made to non-consenting individuals without reasonably investigating the propriety of the vendor's telemarketing practices:

> Royal Seas had knowledge of facts that would have led it to investigate Prospects's lead-generation activities to determine if it was calling only consenting individuals, but instead accepted leads generated by Prospects's calls with scant investigation.

*McCurley*, 2022 WL 1012471, at *2.

The appellate panel in *McCurley* also cited the pervasive TCPA violations in the "cruise industry" to support its finding Royal Seas should have known about its telemarketing vendor's violations. *Id*., at 5. Here, the FAC alleges "given the widespread and pervasive TCPA violations in messages purporting to offer rewards and sweepstakes, Flatiron had reason to carefully scrutinize the marketing activities of HasTraffic while HasTraffic was acting on Flatiron's behalf. Doc. No. 32, ¶ 114. Recent TCPA cases involving calls where the telemarketers claimed "consent" from sweepstakes and reward sites make is clear this assertion is not simply conjecture. *See Gaker v. Citizens Disability, LLC*, No. 20-CV-11031-AK, __ F.Supp.3d __ | 2023 WL 1777460 (D. Mass. Feb. 6, 2023) (summary judgment for plaintiff where "consent" was obtained through deceptive sweepstakes site); *See Berman v. Freedom Financial Network,* 30 F.4th 849 (9th Cir. 2022) (TCPA defendant cannot enforce arbitration agreement where consumer consent came from deceptive sweepstakes site with inconspicuous disclosure). Accordingly, Flatiron knew or had reason to know TCPA violations could arise in the marketing connected to sweepstakes and rewards sites.

Further demonstrating ratification, the FAC describes Flatiron taking ownership of the text messages sent on its behalf when the messages are seen as a positive sign of consumer engagement (as opposed to the basis for a lawsuit). Specifically, Plaintiffs cite to Flatiron's public boasting: "Flatiron represents on its website that it generates more than "50 million

client leads year after year" and that some of these leads are generates through "SMS [campaigns]." *Id*, ¶ 39.

### 3. Flatiron improperly bases its motion on pleading requirements that conflict with Rule 8, particularly before it has responded to formal discovery.

Unwanted telemarketing calls and messages continue to top the list of consumer complaints to the FTC and FCC every month, with over five million complaints registered in 2021 alone. Federal Trade Comm'n, FTC Issues Biennial Report to Congress on the National Do Not Call Registry   (Jan.   5,   2022)   available   at:   https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.   The telemarketing and lead generation industries are notoriously opaque, leaving consumers uncertain as to the specifics about the identities of those disrupting their privacy.  Here, informed consumers embraced the role of "private attorneys general", as prescribed by Congress,[6] followed the links from the spam text messages, which led them to a data-mining website purporting to offer "sweepstakes" and rewards.  While refusing to produce its contract with HasTraffic (*see* Doc. 50), Flatiron simultaneously seeks to capitalize off Plaintiffs' lack of clairvoyance under the mistaken belief that Rule 8 requires plaintiffs to plead evidence and/or specific minutiae about the contractual relationships between defendants before formal discovery has commenced.  *See generally,* Doc. 47.

Fortunately for Plaintiffs, courts within the Second Circuit and nationwide have routinely rejected the vicarious liability arguments advanced by Flatiron, particularly where defendants seek to capitalize on a plaintiff's inability to know the unknowable before discovery.  *Metten v. Town*

---

[6] S*ee* Charvat v. Echostar Satellite, LLC, 630 F.3d 459, 461 (6th Cir. 2010) ("Philip Charvat has not been shy in taking on the role of a private attorney general under the Telephone Consumer Protection Act")

*Sports Int'l, LLC*, 2019 WL 1299939 (S.D.N.Y. Mar. 21, 2019) is instructive. The *Metten* court denied a TCPA defendant's motion to dismiss a vicarious liability claim where the plaintiff alleged the defendant authorized its vendor to send text messages on its behalf and that authorized text messages to be sent, which identified the defendants. *Id*. at *1-3. The court rejected the defendant's 12(b)(6) motion, which was predicated on the purported absence of specific allegations in the complaint about the defendants' contractual relationship. *Id*. at *3. Specifically, the court held, "[w]hile Plaintiff does not allege the specifics of any contractual relationship between [telemarketing vendor] and Defendants, once again, **requiring her to do so prior to discovery would be unreasonable**." *Id.* (emphasis added).

Like the plaintiff in *Metter,* Plaintiffs allege and present screenshots of Flatiron's webpage to which each of the Plaintiffs were directed from HasTraffic's text messages to Plaintiffs. Doc. 32, at ¶¶ 62, 81, 100. This case, however, is stronger than *Metter* because Plaintiffs **do** allege facts reflecting the control Flatiron could exercise over HasTraffic, in connection with the contractual relationship between the Defendants. *Id.* ¶¶ 108-111. In fact, Plaintiffs allege HasTraffic represents on its website that "**the advertiser has control over the text** and the ability to pre-approve the copy." *Id.* at ¶ 110 (emphasis added). Plaintiffs are not required to know the extent of the minutiae of the contractual terms between Flatiron and its vendor, particularly where Flatiron refuses to produce the agreement. Simply put, Rule 8 does not demand the plaintiff know the unknowable before discovery.

*Bank v. CreditGuard of Am*., 2019 WL 1316966 (E.D.N.Y. Mar. 22, 2019) reached a similar conclusion. The *Bank* court denied the TCPA defendants' motion to dismiss a vicarious liability claim where the plaintiff's complaint made only basic allegations about the interrelated and overlapping personnel between several companies involved in digital and telemarketing

ventures.  *See id*. at *9   The court concluded the plaintiff pleaded sufficient facts to put the

defendants on notice of the claims and sufficient allegations for the court to draw an inference for

vicarious liability:

> Plaintiff has no obligation under federal pleading rules to apprise Defendants of his
> legal theories in his complaint. The bottom line is that Defendants have been on
> notice since near the outset of the case that Plaintiff seeks to hold them vicariously
> or jointly liable, and that is all Plaintiff is required to do. Indeed, the core point of
> Plaintiffs' allegations against the Freedom Defendants is that it is difficult to tell
> where one Defendant stops and the next one starts. Under such circumstances,
> Plaintiff **need not specify in detail the actual relationship and division of
> responsibilities among the Freedom Defendants in order to satisfy Rule 8**.

*Id.* at *10 (emphasis added and internal citations and quotations omitted).

In the seminal case *Bilek v. Fed. Ins. Co*., 8 F.4th 581 (7th Cir. 2021), the Seventh Circuit

reversed a district court holding that imposed an unreasonably high burden at the pleading stage

as to details on an agency relationship on a TCPA plaintiff:

> allegations of minute details of the parties' business relationship are not required to
> allege a plausible agency claim. A complaint need not allege all, or *any*, of the facts
> logically entailed by the claim and it certainly need not include evidence. . . .
>
> Bilek **need not prove his claims at the pleading stage, and we need not resolve
> the bounds of Bilek's agency claims here.** We decide only that Bilek alleges a
> plausible claim for relief.

*Id.* at 588 (quotations and citations omitted).

A host of other courts have issued similar holdings. *See Cunningham v. Foresters Fin.*

*Servs., Inc.,* 300 F. Supp. 1004, 1016 (N.D. Ind. 2018) ("at the pleading stage, it is irrelevant that

a plaintiff cannot identify…what arrangement that third party had with the defendant vendors

because the defendants, and not the plaintiff, are reasonably expected to know this information");

*See Mauer v. Am. Intercontinental Univ., Inc*., 2016 WL 4651395, at *2 (N.D. Ill. Sep. 7, 2016)

("Plaintiffs may obtain evidence of a relationship between a vendor and telemarketer through

discovery if they do not know the information on their own."); *See Charvat v. Allstate Corp.*, 29

F. Supp. 3d 1147, 1151 (N.D. Ill. 2014) (citing *Dish Network*, 28 FCC Rcd. at 6592-93) ("These objections are meritless because it is defendants, not plaintiff, who can reasonably be expected to know these facts"); *See also Bilek*, 8 F.4th at 589 ("of course, the parties may pursue discovery on these theories. And the parties may move for summary judgment on all or any part of Bilek's claims… At this stage, we hold only that Bilek's complaint should not have been dismissed under Rule 12(b)(6)"); *Braver v. Northstar Alarm Servs., Ltd. Liab. Co.*, 2017 WL 11139779, at *4 (W.D. Okla. Aug. 25, 2017) (specific details about the agency relationship, noting such information would "rarely be available to a plaintiff at the pleadings stage"). Moreover, in *Mey v. Patriot Payment Grp*., LLC, 2016 WL 11501451 (N.D.W. Va. July 26, 2016), the court denied a defendant's motion to dismiss a complaint that contained substantially less than asserted here by Plaintiffs. *Id*. at *6. The *Mey* court reasoned that requiring details about the business relationship between the parties as part of the requisite pleading standards on agency "would establish a near-insurmountable pleading standard for consumers . . . ." *Id.*

Here, the complaint alleges Flatiron hired HasTraffic to "implement its aggressive SMS text message campaign" and paid HasTraffic per "lead" generated by HasTraffic for Flatiron. Doc. 32, ¶ 41. And, HasTraffic's website expressly states  "the advertiser" has  "control over the text and the ability to pre-approve the copy" The complaint further describes with specificity the marketing messages received by each Plaintiff sent by HasTraffic, and how each Plaintiff linked the messages received to Flatiron.  *Id.*, ¶¶ 49-104.

The Court should reject Flatiron's efforts to rewrite the rules of pleading and create an insurmountable burden. The FAC easily satisfies Rule 8(a) by pleading cognizable claims with sufficient facts to render vicarious liability plausible.

#### 4.   The authorities relied upon by Flatiron are distinguishable.

In its Memorandum, Flatiron relies primarily on three cases discussed below, which are each distinguishable. Doc. No. 48.  Flatiron's reliance on *Hale v. Teledoc Health, Inc*., 2021 WL 1163925 (S.D.N.Y. Mar. 25, 2021) is misplaced for several reasons.  First, the allegations in *Hale* were wanting in ways that Plaintiffs' allegations as to the relationship between Flatiron and HasTraffic are not.  In *Hale*, Judge Bricetti noted the operative complaint did "not allege facts suggesting Teledoc directed HII to make the calls at issue, nor do they claim Teledoc wrote or approved any call scripts." *Id.* at *4. Here, Plaintiff not only alleges Flatiron approves and controls the marketing messages sent by HasTraffic, but cites to HasTraffic's public representations and website which confirm that is the case.  Doc. 32, at ¶¶ 109-110 (attaching screenshot of HasTraffic webpage confirming advertisers have the ability to control text message campaigns).  The *Hale* case also relied on the Northern District of Illinois decision in *Bilek v. Federal Ins. Co.,* 2020 WL 39604455 (N.D Ill. July 13, 2020), which was reversed by the Seventh Circuit months after the *Hale* decision issued. *See Bilek v. Fed. Ins. Co*., 8 F.4th 581, 584 (7th Cir. 2021). Accordingly, in addition to being factually distinguishable from this matter, *Hale* rests – at least in part- on a foundation rendered defective by the Court of Appeals.

Flatiron also relies heavily on the cases *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-02440 (VEC), 2015 WL 7736547 (E.D.N.Y. Nov. 30, 2015) Doc. No. 48, pp..7, 8, 10, 11) and *Bank v. Vivint Solar Inc.*, No. 18-CV-2555, 2019 WL 1306064 (E.D.N.Y. March 22, 2019) (Doc No. 48).  However, those cases involve complaints with sufficiently less in terms of allegations than Plaintiffs allege here.  The plaintiff in *Vivint Solar* conclusory alleged, with no supporting facts, that the defendant "placed or directed to be placed" the call at issue. *See Vivint.* Moreover, the *Vivint* complaint did not allege that the name of the company was identified in the

call at issue.  Likewise, the plaintiff in *Melito* did not allege any facts detailing the relationship between the alleged principal and agent.  *See, Melito*.  Rather, the complaint made conclusory allegations that the principal had the right to control and controlled the sending of the relevant text messages.  Here, Plaintiffs allege with specificity the basis for their allegations of direction and control.  Doc. 32, at ¶¶ 36-38, 109-113.

Plaintiffs cite substantially more authorities for their position than Flatiron does for its position and the authorities cited by Flatiron are each distinguishable.  That is because the weight of authority and the standards of Rule 8 favor Plaintiffs' position.  Accordingly, Flatiron's motion to dismiss fails.

## IV.     CONCLUSION

For the foregoing reasons, Defendant Flatiron Media, LLC's motion to dismiss should be denied.

KIMMEL & SILVERMAN, PC

/s/ Jacob U. Ginsburg
Jacob U. Ginsburg (*pro hac vice*)
Craig T. Kimmel
30 East Butler Ave.
Ambler, PA 19002
Phone: (215) 540-8888 ext. 148
Facsimile: (877) 788-2864
Email: kimmel@creditlaw.com
jginsburg@creditlaw.com
teamkimmel@creditlaw.com

BUTSCH ROBERTS & ASSOCIATES LLC

Christopher E. Roberts (*pro hac* pending)

17

231 S. Bemiston Avenue, Suite 260
Clayton, Missouri 63105
Telephone: (314) 863-5700
Facsimile: (314) 863-5711
Email:  CRoberts@butschroberts.com

Dated: June 30, 2023

Certificate of Service

I, Jacob U. Ginsburg, Esq. hereby certify that I served a true and correct copy of the foregoing on

all parties of record via ECF on June 30, 2023.

/s/ Jacob U. Ginsburg