

ROBERT M. SILVERMAN[+*-]
CRAIG THOR KIMMEL[+-^]

[+] *Member, PA Bar*
[*] *Member, NJ Bar*
[x] *Member, DE Bar*
[-] *Member, NY Bar*
[^] *Member, MA Bar*
[#] *Member, MD Bar*
[●] *Member, OH Bar*
[□] *Member, NH Bar*
[±] *Member, CT Bar*
[“] *Member, TN Bar*
[u] *Member, WY Bar*
[¥] *Member, DC Bar*
[¢] *Member, CA Bar*
[○] *Member, WI Bar*
[§] *Member FL Bar*
[ª] *Member, AZ Bar*
["] *Member, TX Bar*
[§] *Member, MI Bar*
[£] *Member, WV Bar*
[&] *Member, IL Bar*
[>] *Member, IN Bar*

JACQUELINE C. HERRITT[+*±¢ O°●]
ROBERT A. RAPKIN[+]
ANGELA K. TROCCOLI[□±]
JASON L. GRESHES [+*-^]
CHAD P. DOMAN[+ £●]
JACOB U. GINSBURG[+*§]
BLAKE K. WALSH[α&>»]
MARY HIGGINS[* x]
JOHANNY GRULLON [*]
LENNY BUSH, Of Counsel [¢]

www.CREDITLAW.com
(800)-NOT-FAIR

**CORPORATE HEADQUARTERS**
30 E. Butler Avenue, Ambler, PA 19002
Toll Free (800)-668-3247
Fax (877) 600-2112

**WESTERN PA OFFICE**, 100 Ross Street, Suite 330, Pittsburgh, PA 15219, P (412) 566-1001, F (215) 540-8817
**NEW JERSEY OFFICE**, Executive Quarters, 1930 E. Marlton Pike, Suite Q39, Cherry Hill, NJ 08003, P (856) 751-4152, F (856) 216-7344
**DELAWARE OFFICE**, Commonwealth Building, 260 Chapman Road, Suite 201, Newark, DE 19702, P (302) 525-6607, F (302) 525-6618
**NEW YORK OFFICE**, 1180 Avenue of the Americas, 8th Floor, New York, NY 10036, P (212) 719-7543, F (877) 617-2515
**BUFFALO, NY OFFICE**, 1207 Delaware Avenue, Suite 440, Buffalo, NY 14209, P (716) 332-6112, F (800) 863-1689
**OHIO OFFICE**, 4031 Colonel Glenn Highway, Suite 450, Beavercreek, OH 45431, P (937) 306-7220, F (215) 540-8817
**SAN FRANCISCO, CA OFFICE**, 1160 Battery Street East, Suite 100, #1099 San Francisco, CA 94111, P (415) 947-7827, F (215) 540-8817
**SAN DIEGO, CA OFFICE**, 101 West Broadway, Suite 300 PMB, #344 San Diego, CA 92101, P (619) 785-3003, F (215) 540-8817
**LOS ANGELES, CA OFFICE**, 811 Wilshire Boulevard, Suite 1700-241, Los Angeles, CA 90017, P (213) 340-7770, F (215) 540-8817

**PLEASE REMIT ALL CORRESPONDENCE TO THE AMBLER OFFICE**

July 2, 2023

**Submitted Via ECF and Email**
Honorable Jesse Furman
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 1105
New York, NY 10007
Furman_NYSDChambers@nysd.uscourts.gov

       **Re: Carrodine, *et al* v Flatiron Media, LLC and HasE.com, LLC**
       **Case No. 1:22-cv-09660-JMF**

To the Honorable Judge Furman:

    I write to Your Honor on behalf of Plaintiffs Jason Carrodine, Eli Reisman and Kimberly Hudson (collectively "Plaintiffs") to provide a reply to points raised by Flatiron Media, LLC in its responsive letter dated June 30, 2023 and to include the Certification prescribed by the Court's Individual Rule 3(E).

    **1.  Plaintiffs' concern is not Rule 8, but Rule 1**

    Flatiron was served with the Complaint in ***January 2023*** and finally filed its first responsive pleading in ***June***. That is because Flatiron insisted upon consecutive lengthy extensions of time, ostensibly to allow the parties to informally exchange information. Now, after almost six months of extensions and adjournments, it has stopped exchanging information and simultaneously filed a 12(b)(6) motion where it argues Plaintiffs purportedly fail to describe the contractual relationship between the Defendants (when the Defendants refuse to produce the contract). This motion need not pause discovery.

Despite Flatiron's insistence, Plaintiffs are **not** concerned with their ability to meet the Rule 8 requirements. Rather, Plaintiffs are frustrated that Flatiron is attempted to cause yet another indefinite delay while the unnecessary motion is adjudicated.  If Flatiron truly believed no agency relationship with HasTraffic existed, it could file a motion for summary judgment based on the evidentiary record, while the parties proceeded with discovery and Plaintiffs could prosecute their case.

This concern is not only one of expediency, but also practical.  TCPA litigation (especially class litigation) often involves phone records and records of data transmission involving third-parties, and even sub-vendors of those third-parties.  Such records are often deleted as a matter of course after time, so Flatiron's insistence on filing a dispositive motion and halting discovery after months of delay puts the parties' ability to procure records at risk. A litigation hold letter may not solve that problem as such letters often do not make it to downstream vendors.

### 2. Flatiron's accusation Plaintiffs are on a "fishing expedition" is absurd

Flatiron was the company being promoted in the underlying spam messages to the Plaintiffs. We only learned of HasTraffic from Flatiron, which disclosed a contractual relationship with HasTraffic for SMS text marketing. We are asking for a single document that memorializes that acknowledged relationship when: (1) Plaintiffs and Flatiron held their 26(f) conference months ago; (2) the parties had been exchanging discovery informally; and (3) Flatiron claims its relationship with HasTraffic does not warrant imputation of liability to Flatiron. Plaintiffs' request is the opposite of "fishing."

### 3. HasTraffic's position remains elusive.

HasTraffic has still not issued Rule 26(a) disclosures or bothered explaining its position about the "correct" corporate party that contracted with Flatiron. HasTraffic does not even have a pretext to abstain from discovery as it answered the complaint. Independent from the point-counterpoint between Plaintiffs and Flatiron, HasTraffic's elusive and non-participatory conduct in itself warrants a conference with the Court.

### 4. Flatiron's procedural objection to Plaintiffs' letter.

Flatiron states that Plaintiffs' letter does not have a certification of conferral, as prescribed by this Court's Individual Rule 3(E).[1] While the entirety of the entire letter describes our efforts to confer with the Defendants and how those efforts spurred the letter, Flatiron is correct that the initial letter did not contain a certification.  That certification is below:

---

[1] Flatiron also incorrectly claims that Plaintiffs' June 28, 2023 letter is in contravention of Fed. R. Civ. P. 37(a)(1) for purported lack of consultation.  However, Rule 37(a) relates to motions to compel, not requests for conferences.

        Respectfully,

        _____
        Jacob U. Ginsburg, Esq.

cc: all counsel of record (via email and ECF)

## **CERTIFICATION OF CONFERRAL**

I Jacob U. Ginsburg, hereby certify under the pains and penalties of perjury the following efforts to meet and confer took place:

      On June 8, 2023 I emailed Jim Snell requesting the contract between Flatiron and HasTraffic. Snell responded June 12, 2023 stating Flatiron was no longer willing to exchange information and documents informally. Mr. Snell reiterated that same thing on the phone that day. I emailed both Defendants a single formal document request on June 12, 2023 and Mr. Snell responded on June 14, 2023, that Flatiron was still unwilling to respond to same.

      I emailed Patrick Downe and Marie Revault on several occasions, including June 16 and June 22, 2023 about the confusion about the party identification. I also called Patrick Downe and Marie Revault on various occasions, including June 16, 2023. I was able to speak with Ms. Revault on June 16, 2023, but she advised she was not "authorized" by Patrick Downe to discuss the case. I placed additional calls to Mr. Downe but he never answered or called back. My co-counsel, Chris Roberts called and emailed both Mr. Downe and Ms. Revault on June 19, 2023 and he spoke with Ms. Revault on June 19, 2023. Roberts explained the need to have the information about the corporate party that contracted with Flatiron by June 30, 2023 to file an Amended Complaint and avoid wasted time and effort by all. Ms. Revault also told Mr. Roberts she wasn't "authorized" to discuss the case. Mr. Downe also ignored Mr. Roberts.

        SO CERTIFIED:

        _____
        JACOB U. GINSBURG