**BUTSCH ROBERTS & ASSOCIATES LLC**
ATTORNEYS AT LAW
7777 BONHOMME AVENUE - SUITE 1300
CLAYTON (ST. LOUIS), MISSOURI 63105

DAVID T. BUTSCH*
CHRISTOPHER E. ROBERTS**

*Also Licensed in Illinois
**Also Licensed in Illinois & Kansas

PHONE: 314.863.5700
FAX: 314.863.5711
www.butschroberts.com

August 29, 2024

**Filed via ECF**
Hon. Jesse M. Furman
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, New York 10007

    In re: Case No. 1:22-cv-09660-JMF - *Carrodine et al. v. Flatiron Media LLC et al.*

Dear Judge Furman:

    Jacob Ginsburg and I represent Plaintiffs in this matter. We write this letter to address two issues. First, pursuant to NYSD L.R. 37.2 and this Court's Individual Rule and Practice 3(d), we request a conference with the Court to address a discovery impasse. Second, we request the Court's direction on scheduling mediation, which is dependent on a resolution of the discovery impasse.

    This case is a putative class action concerning the improper sending of marketing text messages to a putative class of persons' whose phone numbers were registered on the National Do-Not-Call Registry. Plaintiffs allege the sending of such text messages violates Section 227(c) of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c) *et seq.*, and the TCPA's corresponding regulations.

    Thus, the fundamental records Plaintiffs need to litigate this case are the text messages sent by Defendants or those acting on Defendants' behalf (i.e. those which promote Flatiron's webpages). The recipients of those text messages with phone numbers on the National Do Not Call registry, would be the members of the class Plaintiffs seek to certify. However, to date, neither Flatiron nor the HasTraffic Defendants have produced record of the text messages sent, which promoted Flatiron's websites.

    As the Court is aware, this case has been pending for over a year against Defendant Flatiron Media, LLC. At the outset of the case, Flatiron stated in its Rule 26 disclosures that now-Defendant HasTraffic, not Flatiron, had information concerning "consent" and "communications with Plaintiff." Flatiron also stated that HasTraffic has documents

Hon. Jesse Furman
Discovery Impasse Letter
August 28, 2024

"evidencing consent" to receive text messages. To better understand this assertion, Plaintiffs served Defendant with written discovery requests. Flatiron stated in its interrogatory answers that it had no information about the text messages at issue, and that HasTraffic would have such information. Flatiron stated in its answers to Plaintiffs' interrogatories:

- "Flatiron has no way of knowing who HasTraffic might have sent 'SMS messages' to during the class period.

- "Flatiron does not know who was sent SMS messages during the class period."

- "Flatiron has paid HasTraffic for clicks on links in SMS messages sent by HasTraffic's partners and affiliates."

- "It was always Flatiron's understanding however that consumers provided HasTraffic affiliates with prior express written consent and that those affiliates were in compliance with the TCPA."

- "Flatiron also understood based on oral communications with HasTraffic that HasTraffic has only worked with partied who were TCPA compliant."

- "Flatiron does not know which of HasTraffic's partners may have sent SMS messages during the class period or to whom they were sent, with the exception of individuals who ultimately used links provided in such SMS text messages to navigate to and register on Flatiron web properties."

- "Flatiron is informed and believes that information related to consent is in the possession of HasTraffic or those with whom HasTraffic has relationships."

Based on Flatiron's representations in its Rule 26 disclosures and discovery responses (and based on multiple discussions with Flatiron's counsel), Plaintiffs amended the complaint to add the HasTraffic defendants (referred to collectively as "HasTraffic"). Plaintiffs then delayed the case by months to effectuate service through the Hague Convention. HasTraffic has now been served and is represented by counsel.

We have held multiple conferences with HasTraffic's counsel. Those conversations have been enlightening and productive, and we appreciate the candor and professionalism expressed by HasTraffic's counsel. However, those conversations present a completely

different picture regarding the text messages at issue than what has been represented to us by Flatiron over the course of the last year.

HasTraffic's counsel has advised that HasTraffic merely connects Flatiron with an affiliate, or what HasTraffic refers to as a "publisher." A "publisher" is a company who may be interested in selling traffic—such as "clicks" on hyperlinks in text messages that the publisher has sent—to a company such as Flatiron that wishes those clicks to be redirected to Flatiron's preferred landing pages. In other words, the publisher sends the messages and generates the traffic and Flatiron chooses which traffic it wishes to buy. HasTraffic's counsel asserts that it is not involved with the sending of the text messages - all text messages are sent by the publisher. Counsel also represents that HasTraffic never sees/receives any of those text messages (or any copies thereof). Rather, the publisher sends text messages, which generate traffic, which Flatiron then buys. In other words, HasTraffic asserts that it does not have records of the text messages at issue. HasTraffic's counsel believes that those records would be in the possession of either Flatiron, the publisher who sent the messages, or both.

Flatiron, however, continues to assert that it does not have records of the text messages at issue. Moreover, despite the fact we have now learned of Flatiron's relationship with publishers/affiliates, Flatiron has still not identified any publishers/affiliates who sent such text messages in its discovery responses or informally.

While both Flatiron and HasTraffic claim not to have the class records in their possession, both have a legal obligation to have those records in their custody or control. The litigation hold went into effect in December 2022, when Flatiron was served with this class-action complaint, and according to Flatiron, it communicated about the complaint with HasTraffic. Therefore, both Defendants have known about their obligation to retain records for this matter since December 2022.

Furthermore, the Telemarketing Sales Rule requires both a "telemarketer", who directly places calls/texts, and a "seller", whose behalf calls/texts are made, to keep records for 24 months from the time of the marketing activity at issue. 16 C.F.R. §§ 310.5(a)-(d). In the TCPA context, the court in *Perrong v. Sperian Energy Corp.*, No. 2:19-cv-00115-RFB-EJY, 2020 WL 6287723 (D. Nev. Oct. 27, 2020), imposed sanctions, including an adverse inference, against a TCPA defendant for failing to retain and preserve phone records of calls to putative class members by its independent telemarketing vendors, after being on notice of the class-action suit. The *Perrong* court held the defendant seller "had an obligation to ensure its strategic partner preserved records and to ensure the prompt disclosure of the location of calling record at issue in this dispute." *Id.* at 25.

We cannot effectively litigate this case, and therefore effectively mediate the case, without these fundamental records. We are certainly open to having settlement discussions

Hon. Jesse Furman
Discovery Impasse Letter
August 28, 2024

to reach a resolution that is fair for all parties. However, as we have been trying to get these records for quite some time, and there now seems to be no end in sight, we respectfully request a conference with the Court to resolving this critical issue.

We look forward to working with the Court and continuing to work with opposing counsel toward resolving this issue, and hopefully working toward a resolution of the case.

Respectfully submitted,

*Christopher E. Roberts*

Christopher E. Roberts