# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON CARRODINE, et al.,<br><br>       Plaintiffs,<br><br>  v.<br><br>FLATIRON MEDIA LLC, et al.,<br><br>       Defendant. | Case No. 1:22-cv-09660 (JMF)<br><br>**DEFENDANTS UNLIMITED TRAFFIC LIMITED, SEA RANCH INTERNATIONAL LIMITED, AND SEA RANCH INTERNATIONAL PTE. LTD.'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>**EVIDENTIARY HEARING REQUESTED** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................i

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION...................................................................................................................1

BACKGROUND .....................................................................................................................2

    A.   Plaintiffs allege that the Foreign Defendants are liable under the TCPA for sending the messages at issue in this lawsuit but their complaint attributes those actions to a Montana company that is no longer a party to this lawsuit. .......... 2

    B.   None of the Foreign Defendants are related to the Montana company and none have a meaningful presence in New York.................................................................. 2

    C.   None of the Foreign Defendants sent text messages—whether on behalf of themselves, Flatiron, or anyone else.......................................................................... 3

    D.   None of the messages at issue in this lawsuit were targeted at or received by New York residents and Plaintiffs were not present in New York when they received the messages. ................................................................................................ 4

ARGUMENT .......................................................................................................................... 4

    A.   Plaintiffs' jurisdictional allegations concern "Defendant HasTraffic" and not the Foreign Defendants. ...................................................................................... 5

    B.   This Court lacks general jurisdiction over the Foreign Defendants because none of them are "at home" in New York. ............................................................... 6

    C.   New York's long-arm statute does not permit exercising specific personal jurisdiction over any of the Foreign Defendants. ...................................................... 7

        1.   None of the Foreign Defendants "transacts any business within the state"... 8

        2.   None of the other provisions of New York's long-arm statute apply. ............11

    D.   The exercise of personal jurisdiction over any of the Foreign Defendants would be inconsistent with Fourteenth Amendment due process principles. ................... 12

CONCLUSION.....................................................................................................................13

# TABLE OF AUTHORITIES

## Cases

*3 Chloe' v. Queen Bee of Beverly Hills, LLC,*
    616 F.3d 158 (2d Cir. 2010) ................................................................................. 6

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,*
    98 F.3d 25 (2d Cir. 1996).................................................................................... 9

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................... 7

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
    171 F.3d 779 (2d Cir. 1999)...............................................................................11

*Best Van Lines, Inc. v. Walker,*
    490 F.3d 239 (2d Cir. 2007) .......................................................................... 8, 10

*Citizens United v. Schneiderman,*
    882 F.3d 374 (2d Cir. 2018) ............................................................................... 7

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014)......................................................................................... 6, 7

*Feathers v. McLucas,*
    15 N.Y.2d 443 N.Y.S.2d 8 (1965) .....................................................................11

*GlaxoSmithKline LLC v. Laclede, Inc.,*
    No. 18-CV-4945 (JMF),
    2019 WL 293329, 2019 U.S. Dist. LEXIS 10952 (S.D.N.Y. Jan. 23, 2019) ............................. 6

*Gucci Am., Inc. v. Bank of China,*
    768 F.3d 122 (2d Cir. 2014)................................................................................ 6

*In re Terrorist Attacks on September 11, 2001,*
    392 F. Supp. 2d 539 (S.D.N.Y. 2005) ................................................................ 5

*Int'l Shoe Co. v. Wash.,*
    326 U.S. 310 (1945) .......................................................................................... 12

*Jazini v. Nissan Motor Co.*,
   148 F.3d 181 (2d Cir. 1998) ................................................................ 5

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   673 F.3d 50 (2d Cir. 2012) ............................................................... 5, 8

*MacDermid, Inc. v. Deiter*,
   702 F.3d 725 (2d Cir. 2012) ............................................................... 5

*Marine Midland Bank, N.A. v. Miller*,
   664 F.2d 899 (2d Cir. 1981) ............................................................... 5

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996) ............................................................... 12

*Navaera Scis., LLC v. Acuity Forensic, Inc.*,
   667 F. Supp. 2d 369 (S.D.N.Y. 2009) ............................................... 10

*Orchard Yarn & Thread Co. v. Schaub*,
   No. 17-CV-2477 (JMF),
   2018 WL 2694433, 2018 U.S. Dist. LEXIS 94790 (S.D.N.Y. June 5, 2018) ...................... 5, 6

*PDK Labs, Inc. v. Friedlander*,
   103 F.3d 1105 (2d Cir. 1997) ............................................................... 5

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
   609 F.3d 30 (2d Cir. 2010) ............................................................... 5

*Robinson v. Overseas Military Sales Corp.*,
   21 F.3d 502 (2d Cir. 1994) ............................................................... 5

*Schutte Bagclosures Inc. v. Kwik Lok Corp.*,
   48 F. Supp. 3d 675 (2014) ............................................................... 8

*Sunward Electronics, Inc. v. McDonald*,
   362 F.3d 17 (2d Cir. 2004) ............................................................... 9

*Thackurdeen v. Duke Univ.*,
   660 F. App'x 43 (2d Cir. 2016) ....................................................... 5, 11

*Van Elzen v. Glob. Strategy Grp., LLC*,
   No. 20-CV-3541 (JPO),
   2021 WL 185328, 2021 U.S. Dist. LEXIS 9671 (S.D.N.Y. Jan. 19, 2021) ...................... 5, 9

**Statutes**

47 U.S.C. § 227 ................................................................................................................. 6

N.Y. C.P.L.R. § 302 .................................................................................................. passim

**Rules**

Fed. R. Civ. P 12 .......................................................................................... 6, 9, 11, 18

Under Federal Rule of Civil Procedure 12(b)(2) Defendant Unlimited Traffic Limited, Defendant Sea Ranch International Limited, and Defendant Sea Ranch International PTE. Ltd. (the "Foreign Defendants") respectfully move the Court to dismiss Plaintiffs' Second Amended Complaint ("SAC") (Dkt. No. 81) because the Court lacks personal jurisdiction over the Foreign Defendants. If Plaintiffs contend this Court has personal jurisdiction over any Foreign Defendant, then the Foreign Defendants request an evidentiary hearing to resolve the merits of this motion.

## INTRODUCTION

The claim that this Court has personal jurisdiction over the Foreign Defendants is fatally flawed for at least four reasons:

First, Plaintiffs direct their jurisdictional allegations against a Montana company that is no longer in this case, rather than against the Foreign Defendants themselves.

Second, none of the Foreign Defendants are "at home" in New York such that they would be subject to this Court's general personal jurisdiction. They have no offices, employees, or other physical presence in New York and Plaintiffs do not meaningfully contend otherwise.

Third, the Foreign Defendants are not subject to specific personal jurisdiction under New York's long-arm statute. Plaintiffs allege a contractual relationship with a New York-based company, but under controlling case law that is not sufficient to trigger jurisdiction under the "transacts business" prong of the statute. And because the Foreign Defendants have no physical presence in the state, own no real property here, and the injuries complained of did not occur in New York none of the other prongs of the long-arm statute apply.

Finally, even if the Court were to conclude that jurisdiction was authorized under the statute, exercising it over the Foreign Defendants would be inconsistent with the Fourteenth Amendment's due process protections, who would have to travel halfway around the world to litigate this matter against out-of-state Plaintiffs.

## BACKGROUND

**A.    Plaintiffs allege that the Foreign Defendants are liable under the TCPA for sending the messages at issue in this lawsuit but their complaint attributes those actions to a Montana company that is no longer a party to this lawsuit.**

On November 11, 2022, Plaintiff Carrodine filed a complaint against Defendant Flatiron Media, LLC ("Flatiron"), alleging violations of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (Dkt. 1.) Specifically, Plaintiffs claim they were sent unsolicited text messages in violation of the TCPA and that those messages were sent on behalf of Defendant Flatiron. Plaintiffs amended their complaint on May 3, 2023, naming Reisman and Hudson as additional plaintiffs and naming "HasE.com" d/b/a "HasTraffic," "a limited liability company incorporated in Montana," as an additional defendant. (Dkt. 32 at ¶ 19.)

Then, on February 6, 2024, Plaintiffs filed a Second Amended Complaint (Dkt. 81, "SAC") removing HasE.com and adding the Foreign Defendants—Unlimited Traffic Limited, Sea Ranch International Limited, and Sea Ranch International Pte. Ltd. But the SAC's jurisdictional allegations only name the Montana company that is no longer a party to this lawsuit.

Specifically, Plaintiffs allege that "[w]hile Defendant HasTraffic is incorporated and headquartered in Montana, upon information and belief, HasTraffic continuously and systematically does business in the State of New York." (SAC at ¶ 26.) The rest of Plaintiffs' jurisdictional allegations contend that this Montana-based company:

- Lists its primary phone number as (917) 464-3783, which is a New York number.

- Was acting on behalf of Defendant Flatiron, a New York company.

- Sent telemarketing text messages to consumers on Flatirons's behalf.

- Sent messages from phone numbers with area codes associated with New York.

- Was paid by Flatiron with money from Flatiron's New York-based bank accounts.

(*See* SAC ¶¶ 27-33.)

**B.    None of the Foreign Defendants are related to the Montana company and none have a meaningful presence in New York.**

None of the Foreign Defendants is or has ever been incorporated or headquartered in the

state of Montana. (Declaration of Richard Totik ("Totik Decl.") at ¶ 8.) None of them have any relationship to the Montana company that Plaintiffs refer to. (*Id.*) The Foreign Defendants are not part of a joint enterprise with the Montana company, they do not share employees, and they do not do any business whatsoever with that company. (*Id.*)

Instead, as Plaintiffs acknowledge, the Foreign Defendants are all overseas companies. Unlimited Traffic Limited and Sea Ranch International Limited are both Hong Kong corporations and Sea Ranch International Pte. Ltd. is a Singapore corporation with an address in Singapore. (SAC at ¶¶ 18-20; *see also* Totik Decl. at ¶¶ 5-7.)

The Foreign Defendants do not have any offices United States, let alone in New York. (Totik Decl. ¶ 9.) None uses New York banks. (*Id.*) And none holds any real property in New York. (*Id.*) None of them is licensed to do business in New York. (*Id.*) None of them has any employees, contractors, members, or managers in New York. (*Id.*) In other words, all potential witnesses having personal knowledge of the Foreign Defendants in relation to this case are located not in New York or the United States, but overseas, thousands of miles away. (*See id.* ¶ 10.) Similarly, none of the records or other information regarding the Foreign Defendants in relation to this case is located in New York. (*Id.*)

**C.    None of the Foreign Defendants sent text messages—whether on behalf of themselves, Flatiron, or anyone else.**

None of the Foreign Defendants sends text messages. (Totik Decl. ¶¶ 11-15.) Instead, they operate a platform that connects publishers—who do send text messages—with advertisers (like Flatiron). (*Id.* ¶ 11.) The publishers control who the messages are sent to, and, when the message contains a hyperlink, the publishers control where users who click on the link are redirected to. (*Id.* ¶ 14.) The "clicks" on these links are often referred to as "traffic." (*Id.* ¶ 12.) That traffic is sold by publishers to advertisers. (*Id.* ¶ 13.)

The Foreign Defendants provide a platform where a publisher looking to sell traffic can connect with an advertiser looking to buy traffic. (Totik Decl. ¶¶ 11, 13.) The Foreign Defendants do not direct the publishers to send the messages, nor do they require the publishers to use their platform. (*Id.* ¶¶ 13, 15.) The publishers are free to—and usually do—offer their traffic on

multiple platforms at once. (*Id.* ¶ 13) Similarly, advertisers are free to bid on traffic across different platforms or to buy it directly from a publisher. (*Id.*)

With regards to this case, Flatiron paid Defendant Unlimited Traffic Limited for use of the Platform to connect with publishers and purchase traffic from those publishers. (Totik Decl. ¶ 16.) The parties' relationship was governed by a standard terms-and-conditions agreement that was neither negotiated nor executed in New York. (*Id.* ¶ 17, Exhibit A.) The choice of law provision for that agreement specifies that Hong Kong law governed the agreement. (*Id.*, Ex. A at § 13(h).) And notices under the agreement were sent to Unlimited Traffic Limited in Hong Kong, not New York. (*Id.*, Ex. A at § 13(g).) None of the Foreign Defendants (nor their agents) ever visited New York to meet with Flatiron about the parties' relationship. (*Id.* ¶ 18.) And the Foreign Defendants were never under Flatiron's supervision or vice versa. (*Id.* ¶ 19.)

Flatiron's payments were made to Unlimited Traffic Limited in Hong Kong. (Totik Decl. ¶ 20.) Flatiron did not pay the other Foreign Defendants, the Sea Ranch entities, at all. (*Id.* ¶ 21.) And Flatiron did not pay any of the Foreign Defendants to send the text messages or to have the text messages sent by publishers. (*Id.* ¶ 22.)

**D.    None of the messages at issue in this lawsuit were targeted at or received by New York residents and Plaintiffs were not present in New York when they received the messages.**

None of the Plaintiffs in this matter are New York residents nor do they claim to have been present in New York when they received the text messages at issue in this case. Instead, Carrodine is a resident and citizen of Nevada, Reisman is a resident and citizen of New Jersey, and Hudson is a resident and citizen of Texas. (SAC at ¶¶7-9.) There is no allegation that Plaintiffs received the complained-of texts in New York or that the messages were sent to New York phone numbers.

## ARGUMENT

A court must dismiss an action against any defendant over whom it lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). In this case, that requires the Court to first determine whether personal jurisdiction is proper under New York law, and, if so, whether it would be consistent with federal due process requirements. *See Thackurdeen v. Duke Univ.*, 660 F. App'x

43, 45 (2d Cir. 2016) (summary order); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012). The plaintiffs bear the burden of establishing that the court has personal jurisdiction over each moving defendant. *See, e.g.*, *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010); *PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir. 1997). To do so, plaintiffs "must state specific 'facts supporting th[e] conclusion' that jurisdiction is proper." *Van Elzen v. Glob. Strategy Grp.*, LLC, No. 20-CV-3541 (JPO), 2021 WL 185328, 2021 U.S. Dist. LEXIS 9671, at *4 (S.D.N.Y. Jan. 19, 2021) (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998)).

As this Court has recognized, in evaluating plaintiffs' jurisdictional claims, the allegations in a complaint are taken as true *unless* they are controverted by defendants' affidavits. *Orchard Yarn & Thread Co. v. Schaub*, No. 17-CV-2477 (JMF), 2018 WL 2694433, 2018 U.S. Dist. LEXIS 94790, *2 (S.D.N.Y. June 5, 2018) (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727-28 (2d Cir. 2012)). When allegations are contested—as they are here—the court considers the complaints and affidavits in a light most favorable to Plaintiffs but it does not accept conclusory allegations or draw argumentative inferences. *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 556 (S.D.N.Y. 2005) (citing *PDK Labs, Inc.,* 103 F.3d 1105, 1108 and *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir. 1994)). The Court may hold an evidentiary hearing on the merits of the motion. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).

A.   **Plaintiffs' jurisdictional allegations concern "Defendant HasTraffic" and not the Foreign Defendants.**

Plaintiffs' Second Amended Complaint fails to allege any jurisdictional facts against the Foreign Defendants. Instead, Plaintiffs allege (in conclusory fashion) that Defendant HasTraffic "is incorporated and headquartered in Montana [but] continuously and systematically does business in the State of New York." SAC ¶ 26. And Plaintiffs' remaining jurisdictional allegations refer back to this same company (SAC ¶¶ 27-33) before concluding that "For those reasons, this Court has personal jurisdiction over HasTraffic." SAC ¶ 34. But "Defendant HasTraffic"—the Montana company—is no longer a party to this case. And that company is not

connected to any of the Foreign Defendants. (Totik Decl. ¶ 8.) The Montana company and the Foreign Defendants do not share employees, do business or otherwise associate with each other. (*Id.*)

So, even taking Plaintiffs' jurisdictional allegations at face value, they do not apply to the Foreign Defendants. As a result, they cannot be used to establish personal jurisdiction over any of them.

And, to the extent that Plaintiffs claim that their reference to "Defendant HasTraffic … incorporated and headquartered in Montana" is actually intended to apply to the Foreign Defendants—none of whom are based in Montana—then, by definition, they are asking the Court to draw an argumentative inference in their favor. And this Court has repeatedly acknowledged drawing such an inference is improper when ruling on a Rule 12(b)(2) motion. *See Orchard Yarn & Thread Co.*, 2018 WL 2694433, 2018 U.S. Dist. LEXIS 94790 at *2 (noting that the Court will not accept [a plaintiff's] conclusory allegations or draw argumentative inferences); *see also GlaxoSmithKline LLC v. Laclede, Inc.*, No. 18-CV-4945 (JMF), 2019 WL 293329, 2019 U.S. Dist. LEXIS 10952, *10 (S.D.N.Y. Jan. 23, 2019) (same).

Accordingly, Plaintiffs' pleadings are facially deficient and the Court need not analyze the issue further. But if it does so, it should still find against exercising personal jurisdiction for the reasons discussed below.

**B.    This Court lacks general jurisdiction over the Foreign Defendants because none of them are "at home" in New York.**

There are two types of jurisdiction, general and specific. *Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 134 (2d Cir. 2014). General jurisdiction "is based on the defendant's general business contacts with the forum state" and permits a court to hear a case even if "the subject matter of the suit is unrelated to those contacts." *3 Chloe' v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).

The exercise of general jurisdiction only comports with due process when an entity's "affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (internal quotation marks and

alterations omitted). This "continuous and systematic" inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic, it is whether that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG*, 571 U.S. at 138-39 (internal quotation marks omitted). This only occurs in "exceptional" circumstances, such that the "at home" requirement is generally only satisfied if the entity is incorporated or has its principal place of business in the forum state. *Id*. at 139 & n.19.

Here, none of the Foreign Defendants are incorporated in New York. (Totik Decl. ¶¶ 5-7, 9-10.) None have offices or employees or any meaningful presence here or any of the other attributes that mark a company as "at home" in a state. (*Id.* ¶¶ 9-10.) Plaintiffs do not really contend otherwise. Instead, they allege in a conclusory fashion that "upon information and belief, HasTraffic continuously and systematically does business in the State of New York." (SAC ¶ 26.) The only factual allegations they provide in support are a New York phone number and doing business with a single New York company. (SAC at ¶¶ 27-29.)

But, as the Supreme Court has explained, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[a] litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018). Having a phone number with a NY area code or a business relationship with a New York company plainly does not rise to the level of "exceptional circumstances" identified by the Supreme Court in *Daimler*.

Accordingly, Plaintiffs have failed to make even a prima facie showing that this Court has general jurisdiction over any of the Foreign Defendants.

## C.    New York's long-arm statute does not permit exercising specific personal jurisdiction over any of the Foreign Defendants.

The Court's analysis of whether it has specific jurisdiction over the Foreign Defendants is governed by New York's long-arm statute, which provides:

> [A] court may exercise personal jurisdiction over any non-domiciliary, or his executor or

administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

   (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

   (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a).

Plaintiffs' pleading does not identify which of these provisions they believe establishes jurisdiction in this case, but they cannot satisfy any of them.

**1.    None of the Foreign Defendants "transacts any business within the state".**

Under Section 302(a)'s first prong, a court must decide "(1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007).

"Transacting business" within the meaning of the long-arm statute "has been interpreted to require a certain quality, rather than a specific quantity, of contacts with New York." *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 48 F. Supp. 3d 675, 684 (2014) (internal quotation marks omitted). "[T]he overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012)

(internal quotation marks omitted).

Here, Plaintiffs allege the Foreign Defendants had a contractual relationship with a New York company. (SAC ¶ 22.) While that favors Plaintiffs, the existence of such a relationship "is not dispositive of whether a defendant 'transacts any business *within* the state' of New York. *Van Elzen v. Glob. Strategy Grp., LLC*, No. 20-CV-3541 (JPO), 2021 WL 185328, 2021 U.S. Dist. LEXIS 9671, *6 (S.D.N.Y. Jan. 19, 2021) (emphasis original, citing N.Y.C.P.L.R. § 302(a)(1)). In fact, in *Van Elzen v. Glob. Strategy Grp., LLC*, the court considered a very similar circumstance to the one presented here and concluded that the mere existence of a contract with a New York company was insufficient to establish personal jurisdiction in a TCPA case. *Id.* at *7.

Rather, when determining whether a contractual relationship satisfies the "transacting business" requirement, the Second Circuit holds that the following factors should be considered: "(i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state." *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)). Although all of the *Sunward* factors are relevant, no one factor is dispositive. *Sunward*, 362 F.3d at 23.

Of the Foreign Defendants, the only Unlimited Traffic Limited was paid by Flatiron, and those payments were sent to Hong Kong. (Totik Decl. ¶ 16, ¶ 20.) And Flatiron use of the platform governed by a standard set of terms and conditions that was neither negotiated nor executed in New York. (*Id.* at ¶ 17, Ex. A.) No employees of the Foreign Defendants ever visited New York to meet with Flatiron about the parties' relationship. (*Id.* at ¶ 18.) And at no point did Flatiron supervise the Foreign Defendants or vice versa. (*Id.* at ¶ 19.) And the terms and conditions themselves specify that notices are to be sent to Unlimited Traffic Limited in Hong Kong for arbitration under the prevailing arbitration laws in Hong Kong. (*See* Ex. A to Totik

9

Decl. at § 13(g), (h).) So, all but one of the *Sunward* factors favor the conclusion that none of the Foreign Defendants "transacted business" within New York under the state's long-arm statute. *See Van Elzen*, 2021 U.S. Dist. LEXIS 9671, *6-7 (concluding same in similar circumstances).

Furthermore, "the mere fact that an out-of-state defendant enters into a contract with a [New York] company . . . does not establish the requisite minimum contacts unless that contract projects the defendant into the New York market." *Navaera Scis., LLC v. Acuity Forensic, Inc.*, 667 F. Supp. 2d 369, 375 (S.D.N.Y. 2009) (finding contract with New York-based company insufficient where contract was performed outside of New York). Just like the plaintiff in *Navaera*, all Plaintiffs have alleged here is the mere fact of a contractual relationship with a New York company. In sum, the Foreign Defendants did not "transact business" *within* New York as required by § 302(a)(1).

Even if the Court concludes otherwise, jurisdiction still does not attach because this suit does not arise from the Foreign Defendants' business in New York. The Second Circuit holds that for a suit to have arisen out of a party's activities in New York there must be "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines, Inc.*, 490 F.3d 239, 246.

Here, the claims asserted arise from the alleged sending of unsolicited text messages on behalf of Flatiron in violation of the TCPA. And Plaintiffs duly recite that "HasTraffic" sent those messages. But even assuming Plaintiffs meant the Foreign Defendants sent the messages, this allegation is false.

As detailed in Mr. Totik's declaration, none of the Foreign Defendants ever send text messages to anyone, let alone to Plaintiffs. (*See* Totik Decl. at ¶¶ 11-15.) Rather, the most that can be alleged in good faith is that the Foreign Defendants connected Flatiron to a publisher who sent text messages. (*Id.*) And, to be clear, none of the Foreign Defendants directed or controlled that publisher. (*Id.* at ¶ 15.) In other words, there is no "articulable nexus" or "substantial relationship" between the claim asserted—which is for the sending of unsolicited text messages barred by the TCPA—and the business of the Foreign Defendants which is limited to connecting publishers and advertisers via a platform that cannot send any text messages.

Plaintiffs' claims in the SAC that the Foreign Defendants sent the text messages were predicated on Plaintiffs interpretation of Defendant Flatiron's discovery responses. (*See* Dkt. 112 at 1-2.) Flatiron has since clarified—to Plaintiffs, to the Foreign Defendants, and to this Court— that "to Flatiron's knowledge, HasTraffic did not send any of the text messages in question to any Plaintiff." (*See* Dkt. 114 at 1.) Given this clarification, Plaintiffs no longer have a good-faith basis to support their allegations that the Foreign Defendants sent the text messages at issue. Or, if Plaintiffs do have an additional basis, they should so state in their opposition to this motion. To the extent that Plaintiffs contest the facts presented in the Totik Declaration, then the Foreign Defendants request an evidentiary hearing so that the Court can make a determination on this issue.

**2.    None of the other provisions of New York's long-arm statute apply.**

The remaining prongs of the long-arm statute concern tortious acts and real property. N.Y. C.P.L.R. § 302(a)(2)-(4).

There are two ways to establish jurisdiction via tortious acts. The first is if a defendant commits a tortious act within New York. N.Y. C.P.L.R. § 302(a)(2). And the second is if a defendant commits a tortious act outside of New York that is felt within New York. N.Y. C.P.L.R. § 302(a)(3). As discussed at length above, the Foreign Defendants did not send the text messages at issue and therefore there are no tortious acts in the first place. (*See* Totik Decl. at ¶¶ 11-15.) But even assuming the truth of Plaintiffs' allegations, these provisions of New York's long-arm statute do not apply.

First, a defendant's physical presence in New York is a prerequisite to establishing jurisdiction under § 302(a)(2). *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 789-90 (2d Cir. 1999). As future-Justice Sotomayor observed in that case, the physical presence requirement was mandated by the seminal New York Court of Appeals case on long-arm jurisdiction, *Feathers v. McLucas*, 15 N.Y.2d 443, 261 N.Y.S.2d 8 (1965). Here, Plaintiffs admit that the Foreign Defendants are not physically present in New York. (*See* SAC ¶¶ 18-20; *see also* Totik Decl. ¶¶ 5-7.) This ends the inquiry. *See Bank Brussels Lambert*, 171 F.3d at 789-90; *see also Thackurdeen*, 660 Fed. Appx. 43, 46 (finding that jurisdiction under § 302(a)(2) was

improper because the defendant's physical presence was lacking, and "a defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2).")

Separately, Plaintiffs do not (and cannot) claim to have experienced injury in New York as is required by Section 302(a)(3). They are not New York residents or citizens and they do not claim to have received the offending text messages while they were in New York. (*See* SAC at ¶¶ 7-9) (establishing Plaintiffs non-New York citizenship and residences) and (¶¶ 24-35) (jurisdictional allegations, none of which allege injury in New York). So there is no basis for applying § 302(a)(3). And even if there was, Plaintiffs would need to establish the Foreign Defendants regularly do business in New York, or engage in another persistent course of conduct, or derive substantial revenue from services rendered in the state, or that they reasonably expect to have reasonable consequences in the state. N.Y. C.P.L.R. § 302(a)(3)(i)-(ii). Plaintiffs have not pled this nor could they do so in good faith.

Finally, Plaintiffs do not (and cannot) allege the Foreign Defendants own real property in New York. And the Foreign Defendants have supplied a declaration to the contrary. (Totik Decl. ¶ 9.) So, jurisdiction is not authorized under Section 302(a)(4).

**D.    The exercise of personal jurisdiction over any of the Foreign Defendants would be inconsistent with Fourteenth Amendment due process principles.**

Even if the Court were to conclude personal jurisdiction is authorized by New York's long-arm statute, it should still dismiss the case because exerting personal jurisdiction over any of the Foreign Defendants would "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). In determining the reasonableness of exercising jurisdiction, the Court balances five factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).

Here, Plaintiffs have burdened the Foreign Defendants—located in Hong Kong and

Singapore—with a lawsuit in New York, many thousands of miles from their places of business which imposes obvious and severe hardships on them. (*See* Totik Decl. ¶¶ 9-10.) The Foreign Defendants operate a considerable distance from New York, possess no license to conduct business in New York, and have no offices, employees, or agents in New York. (*Id*. ¶¶ 5-7, 9-10.) None of the potential witnesses and relevant evidence in relation to the Foreign Defendants are located in New York. (*Id*. 10.) Furthermore, none of the Plaintiffs are citizens or residents of New York which undercuts any plausible assertion that New York is uniquely positioned to give them convenient and effective relief. Indeed, any of the states in which Plaintiffs reside are suitable forums and would have the same interest in enforcing the TCPA as a New York court.

## CONCLUSION

There is no good-faith basis to hale the Foreign Defendants from halfway across the world into a New York City courtroom to contest the false accusations of non-New York residents. Plaintiffs' attempt to do so "offends traditional notions of fair play and substantial justice" and the Court should dismiss the Foreign Defendants from this case for lack of personal jurisdiction.

Dated: September 13, 2024              Respectfully submitted,

New York, New York                    NEWMAN LLP


                                      /s/ Derek A. Newman
                                      Derek A. Newman, SBN. 5897079
                                      11 Broadway, Suite 615
                                      New York, NY 10004
                                      Phone:                 (212) 377-0870
                                      Facsimile:             (212) 377-0871
                                      Email:                 *dn@newmanlaw.com*

                                      Counsel for Defendants
                                      Unlimited Traffic Limited, Sea Ranch International
                                      Limited, and Sea Ranch International PTE. Ltd.