IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON CARRODINE, ELI REISMAN, and KIMBERLY HUDSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FLATIRON MEDIA, LLC, and HASE.COM LLC f/k/a UNLIMITED TRAFFIC LLC d/b/a "HasTraffic",<br><br>Defendants. | Case No.: 1:22-cv-09660-JMF |

I, SUJAY JHAVERI, hereby declare under penalty of perjury, as follows:

1. I am the Board Chairman of Flatiron Media, LLC. As such I am fully familiar with the facts and circumstances surrounding this matter.

2. Plaintiff seeks production of the "text messages sent by Defendants or those acting on Defendants' behalf (i.e. those which promote Flatiron's webpages)" asserting that "the recipients of those text messages with phone numbers on the National Do Not Call registry, would be the members of the class Plaintiffs seek to certify." [Dkt. 112, Letter dated Aug. 29, 2024 from Plaintiff's Counsel to Court].

3. The information sought by Plaintiff cannot be provided by Flatiron for the reasons stated as follows:

4. Flatiron contracted with HasTraffic to serve as the platform through which "publishers" can choose which advertisers they want to promote on their assets. The publishers are companies that market to consumers and sell "clicks" on hyperlinks contained in text messages that are sent by the publisher to consumers.

5. As Flatiron understands, the "publishers" that were involved in sending the subject text messages had a contractual relationship with HasTraffic. Flatiron has never had a contractual relationship with the "publisher(s)". Only HasTraffic has the ability to identify who the "publisher(s)" are.

6. Procedurally, the relationship between Flatiron, HasTraffic, and the "publisher(s)" may be described as follows:

   a. Publishers sent texts to individuals who, as represented by HasTraffic, were TCPA-compliant.

   b. Those users clicked on the URLs embedded in the text links and were sent to a page ("Landing Page") owned and hosted by HasTraffic. It would have been one of many Landing Pages owned and operated by HasTraffic that would ultimately send traffic to one of their many advertisers, such as Flatiron.

   c. Users were shown ads on the Landing Page and if the user clicked on one of those ads, they were sent to a Flatiron website. The URL that the user clicked on contained certain relevant information, discussed below.

      i. The URL the user clicks on from the Landing Page contains certain information, including an anonymized identifier that "identifies" the publisher. This is so that if one particular publisher isn't performing well, Flatiron can ask HasTraffic to block any traffic that originated from that publisher. Some examples of these identifiers are as follows:

         (a) ts5543

         (b) ts7373

         (c) ts5543

7. As confirmed above, the information is anonymized and meaningless in terms of identifying the publisher by name, but it allows Flatiron to tell HasTraffic which publisher is driving better quality traffic.

8. Flatiron has no means of finding out who the publisher(s) are, and any effort to do so would be futile as that information would need to come directly from HasTraffic.

9. During the course of Flatiron's contractual relationship with HasTraffic, it was clear that HasTraffic would not provide Flatiron with the identification of the "publisher(s)" out of fear of disintermediation; HasTraffic didn't want Flatiron to have a direct relationship with the publisher(s) as it would mean Flatiron could work directly with the publisher(s) and cut HasTraffic out of the relationship thereby eliminating HasTraffic's monetary gain.

10. At no time did Flatiron ever have a direct relationship with the publishers. It did not have any contact with them whatsoever. Flatiron never knew who they were, where they were located, or possessed any contact information for them.

11. Upon information and belief, the contractual relationships that HasTraffic has with the publisher(s) would require the publisher(s) to provide HasTraffic with their relevant contact details.

12. The only entity involved in this lawsuit that Flatiron has had any interaction with is HasTraffic.

13. Flatiron is not withholding any information from the Plaintiff, and if it could produce the information sought through a search of its records, it would do so. Flatiron continues to produce responsive documentation to Plaintiff on a rolling basis and will continue to do so until Plaintiff has all responsive material in its possession.

14. There is no amount of discovery that will uncover the identification of the publisher(s) in Flatiron's possession.

15. For these reasons, while it is understood that HasTraffic did not send the subject text messages, we believe that it is in the best position to provide the information sought by the Plaintiff.

## SIGNATURE OF AFFIANT

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated this 19th day of September, 2024.

_____
SUJAY JHAVERI