

ROBERT M. SILVERMAN +-*
CRAIG THOR KIMMEL +-^

+ *Member, PA Bar*
* *Member, NJ Bar*
x *Member, DE Bar*
- *Member, NY Bar*
^ *Member, MA Bar*
= *Member, MO Bar*
# *Member, MD Bar*
• *Member, OH Bar*
□ *Member, NH Bar*
± *Member, CT Bar*
« *Member, TN Bar*
µ *Member, WY Bar*
¥ *Member, DC Bar*
ᵉ *Member, CA Bar*
° *Member, WI Bar*
§ *Member FL Bar*
ᵃ *Member, AZ Bar*
» *Member, TX Bar*
‡ *Member, MI Bar*
£ *Member, WV Bar*
& *Member, IL Bar*
> *Member, IN Bar*

JACQUELINE C. HERRITT +*#¥-o^•
ROBERT A. RAPKIN +
ANGELA K. TROCCOLI ^□±
JASON L. GRESHES +*-‹
CHAD P. DOMAN +ᶤ ᶫ•
JACOB U. GINSBURG +*§
BLAKE K. WALSH «&>§
JENNIFER MENSINGER ‡
TIFFANY POOLE ‡
JOHANNY GRULLON *
YOLANNA R.M. CARTER »
JORDAN C. KINGSTON =
ALICIA MARIE DAVIS +
LENNY BUSH, Of Counsel ᵉ

**CORPORATE HEADQUARTERS**
30 E. Butler Avenue
Ambler, PA 19002
P (215) 540-8888
F (215) 540-8817

**WESTERN PA OFFICE**, 100 Ross Street, Suite 330, Pittsburgh, PA 15219 | P (412) 566-1001, F (215) 540-8817
**NEW JERSEY OFFICE**, Executive Quarters, 1930 E. Marlton Pike, Suite Q29, Cherry Hill, NJ 08003 | P (856) 429-8334, F (215) 540-8817
**DELAWARE OFFICE**, 2710 Centerville Road, Suite 101, Wilmington, DE 19808 | P (800) 536-6652, F (302) 428-0265
**NEW YORK OFFICE**, Two Park Avenue, 20th floor, New York, NY 10016 | P (212) 719-7543, F (877) 617-2515
**BUFFALO, NY OFFICE**, 1207 Delaware Avenue, Suite 440, Buffalo, NY 14209 | P (716) 332-6112, F (800) 863-1689
**OHIO OFFICE**, 4031 Colonel Glenn Highway, Suite 450, Beavercreek, OH 45431 | P (937) 306-7220, F (215) 540-8817
**SAN FRANCISCO, CA OFFICE**, 1160 Battery Street East, Suite 100, #1099 San Francisco, CA 94111 | P (415) 947-7827, F (215) 540-8817
**SAN DIEGO, CA OFFICE**, 600 West Broadway Suite 700, PMB #344, San Diego, CA 92101 | P (619) 785-3003, F (215) 540-8817
**LOS ANGELES, CA OFFICE**, 611 Wilshire Boulevard, Suite 900 #241, Los Angeles, CA 90017| P (213) 340-7770, F (215) 540-8817

**PLEASE REMIT ALL CORRESPONDENCE TO THE AMBLER OFFICE**

September 24, 2024

**FILED VIA ECF**
Honorable Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 1105
New York, NY 10007

Re: *Carrodine et al. v. Flatiron Media, LLC et al.*, No. 1:22-cv-09660-JMF

Dear Judge Furman:

We first thank the Court for holding the discovery conference on September 11, 2024. At that conference, Your Honor directed Defendant Flatiron Media, LLC ("Flatiron") to advise what it had done to obtain and produce the requested text messages sent to Plaintiffs and the putative class members for this Telephone Consumer Protection Act case.

We reviewed the declaration submitted on September 20, 2024, by Flatiron's Sujay Jhaveri. Dkt. 120. We do not believe the declaration complies with the Court's directive. Specifically, Mr. Jhaveri's declaration fails to address *specifically what Flatiron has done* to obtain and produce the text messages sent to Plaintiffs and the putative class members. Instead, the declaration, without providing specifics, amorphously claims that "it was clear" HasTraffic would not provide Flatiron with information germane to this case. Dkt. 120, ¶ 9. Ultimately, Mr. Jhaveri's declaration raises more questions than answers to Plaintiffs' initial letter and the Court's directive. For example, the following questions are not addressed:

- What specific efforts were made by Flatiron to obtain text message records from HasTraffic concerning Plaintiff and the putative class members (as required by the Court's Order)?

- If any such efforts were made, when were such efforts made?

- What was the specific request or requests made by Flatiron to HasTraffic?

- Did Flatiron issue a preservation letter/directive and/or take other steps to implement a litigation hold, as to its former business partner, HasTraffic?[1]

- What did Flatiron do to ensure compliance with any such litigation hold?

- Did HasTraffic comply with any litigation hold directives from Flatiron?

- How did HasTraffic respond to the litigation hold and/or any preservation directive/letter?

- Did HasTraffic expressly refuse to produce the text messages to Flatiron?

- If so, when and how?

- If HasTraffic expressly refused to produce the text messages to Flatiron, what was the specific reason it offered for refusing to produce the records?

- When did the "contractual relationship" between Flatiron and HasTraffic (referred to in Mr. Jhaveri's declaration) end?

Notably, Flatiron has an obligation to produce records not only within its possession or direct custody, but also those within its control.[2] As Flatiron's declaration makes clear, HasTraffic and Flatiron had a contractual relationship and text messages were sent on Flatiron's behalf pursuant to that contract. As such, Flatiron has an obligation to produce those records to Plaintiffs after Plaintiffs served document requests seeking such documents.

Plaintiffs request the Court require Flatiron to provide a supplemental sworn declaration answering the questions listed above with specificity. We are appreciative of the Court's time and attention.

Very truly yours,

JACOB U. GINSBURG

cc: all parties of record (via ECF)

---

[1] "[O]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003).

[2] A party who contracts with a vendor to telemarket on its behalf has an obligation to assure the vendor retains and makes records of those calls accessible when a litigation hold is in effect. *Perrong v. Sperian Energy Corp.*, No. 2:19-cv-00115-RFB-EJY, 2020 U.S. Dist. LEXIS 10749, at *10 (D. Nev. Jan. 17, 2020) ("Calling records in this TCPA case are obviously records that any entity who is a party to this case must have known had to be preserved.")