IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON CARRODINE, ELI REISMAN, and KIMBERLY HUDSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FLATIRON MEDIA, LLC, and HASE.COM LLC f/k/a UNLIMITED TRAFFIC LLC d/b/a "HasTraffic",<br><br>Defendants. | Case No.: 1:22-cv-09660-JMF<br><br>**SUPPLEMENTAL DECLARATION OF SUJAY JHAVERI** |

I, SUJAY JHAVERI, hereby declare under penalty of perjury, as follows:

1. I am the Board Chairman of Flatiron Media, LLC. As such I am fully familiar with the facts and circumstances surrounding this matter.

2. This Declaration is submitted in response to Plaintiffs' Counsel's letter to the Court dated Sept. 24, 2024 [Dkt. 121].

3. In Mr. Ginsberg's Sept. 24, 2024, letter, he suggests that I have failed to address what Flatiron has done to obtain and produce the text messages sent to Plaintiffs and the putative class members. [Dkt. 121]. He poses the following questions:

- What specific efforts were made by Flatiron to obtain text message records from HasTraffic concerning Plaintiff and the putative class members (as required by the Court's Order)?
- If any such efforts were made, when were such efforts made?
- What was the specific request or requests made by Flatiron to HasTraffic?
- Did Flatiron issue a preservation letter/directive and/or take other steps to
- implement a litigation hold, as to its former business partner, HasTraffic?
- What did Flatiron do to ensure compliance with any such litigation hold?
- Did HasTraffic comply with any litigation hold directives from Flatiron?
- How did HasTraffic respond to the litigation hold and/or any preservation
- directive/letter?

- Did HasTraffic expressly refuse to produce the text messages to Flatiron? If so, when and how?
- If HasTraffic expressly refused to produce the text messages to Flatiron, what was the specific reason it offered for refusing to produce the records?
- When did the "contractual relationship" between Flatiron and HasTraffic (referred to in Mr. Jhaveri's declaration) end?

4. While Flatiron is incapable of providing all of the information sought by Plaintiff, I will endeavor to clarify Flatiron's position further in the hope of resolving this discovery impasse.

5. Upon being served with the initial Summons and Complaint, in Dec. 2022, Flatiron's former counsel provided a copy of the Complaint to HasTraffic, and conferred with HasTraffic's in-house counsel, as to legal strategy. The sum and substance of those communications is privileged.

6. In Dec. 2022, I conferred with Blake Barkley, HasTraffic's Head of Administration, as to the best strategy for addressing the allegations in the complaint filed by Jason Carrodine, who was identified as a serial TCPA accuser.

7. Over the course of my email communications with Blake Barkley, Flatiron's former counsel, and HasTraffic's counsel in Dec. 2022, all of which were subject to a common defense privilege, I requested that HasTraffic and its affiliates provide all relevant information regarding the individuals referenced in the Complaint, TCPA consent for the users in question.

8. On or about Feb. 10, 2023, per the direction sent via email from Flatiron to HasTraffic, HasTraffic ceased all promotion for Flatiron that originated via SMS.

9. On or about March 30, 2023, Flatiron's prior counsel sent us a Litigation Hold letter confirming our prior understanding that we were obligated to preserve all data in our possession concerning or relevant to this litigation.

10. On or about April 20, 2023, Flatiron notified HasTraffic that it was disclosing HasTraffic's name in order to comply with FRCP Rule 26 disclosure requirements.

11.     While we do not have a record of a litigation hold letter being sent to HasTraffic by former counsel, at a minimum, preservation of data was, upon information and belief, discussed verbally in meetings/phone calls between our former counsel and HasTraffic's counsel.

12.     Given the early involvement of counsel, and the fact that the parties were operating under a common defense privilege, HasTraffic would have been aware of its obligations to preserve all information and data relevant to this litigation.

13.     From the beginning of Flatiron's contractual relationship through present, our understanding has always been that HasTraffic does not have the subject text messages because the text messages were sent by the Publishers. For this reason, Flatiron asked HasTraffic for TCPA compliance evidence, which is something they would require of their publishers to be able to react to requests/complaints like this one.

14.     All compliance evidence provided to us by HasTraffic has been provided to Plaintiff throughout the course of discovery.

15.     It is for these reasons that Flatiron never specifically asked HasTraffic for the subject text messages—asking HasTraffic for data that Flatiron knows it doesn't have would be an exercise in futility.

16.     Should Plaintiff require further clarifying information, I am happy to provide it, however, there are only so many ways to articulate that Flatiron does not possess the requested information, and has no way of obtaining the requested information.

## SIGNATURE OF AFFIANT

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated this 2nd day of October, 2024.

_____
SUJAY JHAVERI